(No. 39615.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ISIAH JOHNSON, Plaintiff in Error.

*Opinion filed January 21, 1970.—Rehearing denied March 23, 1970.*

464

Ward, J., took no part.

John T. Allen, Jr., of Chicago, appointed by the court, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Elmer C. Kissane and Michael D. Stevenson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Burt delivered the opinion of the court:

By writ of error issued pursuant to the provisions of former Rule 65—1 (Ill. Rev. Stat. 1963, ch. 110, par.

101.65—1) defendant, Isiah Johnson, seeks reversal of his 1962 convictions of the crimes of rape and burglary on which he received concurrent sentences of 20 to 50 years and one to 20 years respectively. Judgment in the rape case followed a verdict of guilty by a jury after which it was stipulated by counsel for both sides that the evidence on the burglary charge would be the same as in the rape case. A finding of guilty on the burglary charge was made by the court after a jury had been waived. The errors assigned relate to the admission into evidence of certain confessions, the imposition of sentences and trial procedures. Ben Ward and Hiram Brooks, who were found guilty of both crimes after being tried jointly with Johnson, are not parties to this appeal.

On September 20, 1961, prosecutrix lived with her husband at 1924 West Van Buren Street in the city of Chicago. The husband was serving his internship at Cook County hospital and his wife was employed as a nurse on the night shift at Illinois State Psychiatric Institute. The small apartment in which they lived had only one entrance which was at the rear of the building. At about 11 :50 P.M. prosecutrix was preparing to go to her place of employment. The outside screen door was closed and latched but the inside door was open. She heard a noise, and thinking it was her husband returning from his work, unlatched the door and went into the bathroom.

A short time later when she re-entered the kitchen she was confronted by a young Negro whose face was partly covered with a bandana. After demanding money and meeting with some objection on the part of his victim, he became violent, threatened her with a rolling pin, and finally, after ransacking the kitchen, went into the bedroom where he found prosecutrix's purse and took money from it. As she watched this proceeding she suddenly found her arms pinned to her sides by a second man. The two men then threw her onto the bed, removed her undergarments and forcibly

raped her. A third man who entered later also raped her but she was unable to see him because at this time a pillow was being held over her head. The faces of the other two were partially covered at all times. After the men had gone prosecutrix called the police who took her to a hospital for examination. Testimony of the officers who responded to the call establishes that the apartment was in considerable disorder and prosecutrix was in a hysterical condition.

On September 25, 1961, at about 9:30 P.M. Ben Ward, later a co-defendant with Johnson, was arrested by police officers on the basis of a description given them. Ward was taken to the Warren Avenue police station where he was interrogated. Prosecutrix was brought to the station to view Ward and at the trial testified that the man she saw there was the second who entered her apartment. An officer then went to Ward's home and recovered a camera and raincoat which were later identified by both prosecutrix and her husband as items which had been taken from their apartment.

At about 12:30 A.M. on September 26, 1961, four police officers, accompanied by Ben Ward, went to the home of Hiram Brooks where Brooks was arrested. Thereafter all proceeded to the home of Isiah Johnson. After Johnson had been arrested, the three suspects were taken by the officers to the police station where all three were interrogated in the presence of five or six police officers and in the presence of each other. Statements in question and answer form were eventually signed by each of the defendants. Ward's statement was also signed by Brooks and Johnson as witnesses. In these statements the suspects confessed to the rape and robbery related by prosecutrix.

A second statement was taken in the criminal court building on September 26, 1961, at about 10:00 A.M. in an interview with an assistant State's Attorney of Cook County. This was transcribed by a court reporter. The rec-

ord shows that, in Johnson's case at least, the second statement is the same in all material respects as the first. The three defendants were taken before a magistrate on the morning of September 27, 1961, where they were formally charged with the crimes.

Prior to trial Johnson and Brooks made a motion to suppress their confessions on the ground that they had been given under duress, violence and threats. Ward did not join in the motion. After a full hearing the motion was denied and this results in the first assignment of error. Johnson's testimony at the hearing on the motion relates that Ward was beaten by the officers until he implicated Brooks and Johnson; that an officer then presented Johnson with a prepared written statement and told him to sign it, reminding him that he had seen "what Ward got"; that when he refused to sign, the officer seized him by the collar, hit him and threatened to kick him; that he signed only as a result of this coercion. Johnson further testified that when prosecutrix was brought into the room while he was being interrogated he at first denied it when asked if this was the woman he attacked but that later, after he had asked her to remove her glasses, he stated he wasn't sure. He finally admitted on re-direct examination that an officer had read his statement to him and that he had also read it prior to signing.

In testifying on the motion Brooks did not claim that he was struck or physically abused at any time and he further stated that he did not see an officer strike Ward, as claimed by Johnson. He did say he saw a policeman slap Johnson after telling him to "sit back down". As to what happened when prosecutrix entered the room, Brooks testified that after she had removed her glasses Johnson said: "That look like her". Brooks also testified that a prepared statement was submitted to him but admitted that the questions appearing in his signed statement had been asked

and that he had made some of the answers. He finally said that the signed statement had been read to him by an officer before he signed it.

Six police officers testified on the motion to suppress and denied that there had been any physical or psychological coercion in connection with the giving of the statements. All threats or acts of violence mentioned by defendants were specifically denied. The officers described in detail the procedures used in taking and transcribing the statements and their evidence as a whole shows that the entire process lasted less than two hours. One officer testified that when prosecutrix entered the room Johnson identified her as the person he attacked after asking her to take off her glasses. It was further testified that all defendants were present at all times during the interrogation and each of the defendants, with the possible exception of Ward, read his statement before signing it. In addition, there was a flat denial that any of the statements had been prepared in advance of the interrogations.

The determination of the question whether or not a confession is voluntary depends not on any one factor, but upon the totality of all the relevant circumstances. (*People v. Nemke,* 23 Ill.2d 591, 600.) Johnson, hereafter referred to as defendant, urges that the failure to take him before a magistrate without unnecessary delay as required by statute (Ill. Rev. Stat. 1961, ch. 38, par. 600) renders his detention illegal and any statements taken during the period of illegal detention inadmissible. He urges that this court adopt the rule established in *McNabb* v. *United States,* 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608, and *Mallory* v. *United States,* 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356, that failure to present a defendant before a magistrate as required by law *per se* renders a confession obtained during the period of detention inadmissible. We have consistently pointed out that these cases do not rest upon constitutional principles and do not of necessity apply to State criminal prose-

cutions. (*People* v. *Harper*, 36 Ill.2d 398, 402; *People* v. *Novak*, 33 Ill.2d 343, 348; *People* v. *Kees*, 32 Ill.2d 299, 302; *People* v. *Melquist*, 26 Ill.2d 22, 28.) We have held, rather, that an unreasonable delay in presenting a defendant before a magistrate is a circumstance to be taken into consideration in determining whether or not his confession was voluntary. (*People* v. *Harper*, 36 Ill.2d 398, 402.) In a case recently decided we held that a detention of 34 hours before judicial presentment did not of itself render a confession obtained during the period inadmissible although it was a circumstance to be considered on the question of voluntariness. (*People* v. *Nicholls*, 42 Ill.2d 91, 101.) We believe this represents the better view and are not prepared to hold that the period of some 36 hours which intervened between defendant's arrest and his presentment in court is alone sufficient to invalidate his confession. From the taking of the original statement some hour or so after defendant's arrest the only thing of any significance which happened prior to his presentment was the taking of a second statement in the State's Attorney's office which is, as we have said, in all material respects like the first.

Defendant also suggests that his confession is unreliable because the procedural safeguards required in *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were not followed. Since the trial in this case took place prior to June 13, 1966, the requirements of *Miranda* have no application except that failure to observe such procedural safeguards may always be considered as a circumstance in determining voluntariness. (*People* v. *Jackson*, 35 Ill.2d 162, 167; *People* v. *Hartgraves*, 31 Ill.2d 375, 379; *People* v. *Kees*, 32 Ill.2d 299, 302.) There is some evidence in this case that part of the *Miranda* warnings were given. The failure to give the others is not of itself sufficient to strike down the confession.

The preliminary inquiry into the voluntary nature of a confession is a question of its competency and is for the

trial court. In making its decision the court is not required to be convinced beyond a reasonable doubt. (*People* v. *Carter,* 39 Ill.2d 31, 38; *People* v. *De Simone,* 27 Ill.2d 406, 409.) The finding of the trial court on this question will not be disturbed unless it can be said that it is contrary to the manifest weight of the evidence. (*People* v. *Nicholls,* 42 Ill.2d 91, 101; *People* v. *Daily,* 41 Ill.2d 116, 120; *People* v. *Kirk,* 36 Ill.2d 292, 295.) The decision of the trial court in this case is entirely consistent with the evidence presented. There is little evidence of coercion in defendant's own version of what transpired and the inconsistencies in the statements of Brooks and Johnson were apparent to the trial judge as they are to us in reviewing this record. The ruling of the trial court on the motion to suppress was correct.

Complaint is made of the admission into evidence of the confessions of Johnson's co-defendants, Ward and Brooks. Under the circumstances presented we are unable to see how defendant was prejudiced. The defendants were interrogated in the presence of each other and their statements are entirely consistent. There is no evidence that any dispute arose among them as each gave his version of what occurred or that any of them objected at any time to what was being said by any of the others. The defendants were tried jointly without any objections and no claim is made that the defenses offered were inconsistent or that any of them sought to escape punishment by shifting the blame to the others. Johnson and each of his co-defendants substantially denied any connection whatever with the crime. There can be no doubt that when an incriminating extra-judicial statement of a third person is admitted to be true by an accused, the statement by adoption becomes his own and is admissible in evidence against him. (*People* v. *Hanson,* 31 Ill.2d 31, 38.) This court has also held that where defendant has made an admission similar to that made by a co-defendant, the admission of the co-defendant's statement

as well as that of defendant does not result in prejudice where they are tried jointly, especially where there is substantial evidence aside from the admission to support the conviction. (*People* v. *Rhodes,* 41 Ill.2d 494, 500.) While there is little evidence in addition to his confession to support defendant's conviction we believe that the circumstances under which the statements of the three were taken spell out a tacit admission on the part of each that the statements being made by the others are true. The added circumstances of the marked similarity of the statements and their complete consistency removes any possibility of prejudice to any of them in a joint trial.

Error is also assigned on the admission into evidence of the second statement made by defendant which was given to an assistant State's Attorney as heretofore related. The court allowed it for purposes of impeachment after defendant denied on cross-examination that he had ever given a statement admitting his guilt to anyone. The objection by the defense was that it was inadmissible for any purpose since defendant had not been served with a copy and list of witnesses to its taking prior to arraignment as required by statute. (Ill. Rev. Stat. 1961, ch. 38, par. 729.) There can be no doubt that compliance with this statute is mandatory as defendant suggests. (*People* v. *Shockey,* 30 Ill.2d 147, 151; *People* v. *DuPree,* 26 Ill.2d 320, 324; *People* v. *Pelkola,* 19 Ill.2d 156, 159.) The legislative purpose of the enactment is to provide the accused with protection against surprise, unfairness and inadequate preparation by disclosing the required information prior to trial. *People* v. *O'Connell,* 30 Ill.2d 603, 609.

The record shows that as the trial was about to commence and prior to the beginning of the selection of a jury defense counsel stated that he believed from the names of certain witnesses to written confessions which had been furnished him that there was a statement in existence which had been given to assistant State's Attorney Vail and tran-

scribed by reporter Flannery. He requested that a copy be furnished the defense. Counsel for the People stated that such a statement had been made and that copies would be furnished, meanwhile giving defense counsel his own copy for inspection. To facilitate the preparation of copies the court had his secretary make them and they were furnished to defense counsel during a recess in the *voir dire* examination of jurors. The inference is clear that defense counsel had had the names of the witnesses to the confession for some time and suspected the existence of such a document. In accepting the copies of the statement when served, defense counsel made no objection that the statute had not been complied with nor did he make any claim that surprise or prejudice existed.

Under the circumstances we believe that defendant can not be heard to object to the production and use of the statement at the trial. Where there is substantial compliance with the statute, having in mind its purpose, there is no reversible error even though no copy of the confession was served at arraignment. (*People* v. *DiGerlando,* 30 Ill.2d 544, 551.) In *DiGerlando* the statement was furnished 7 months after arraignment and 10 months before trial. We found no prejudice especially since, as here, the other confessions also disclosed guilt. If it be said that the difference in the time interval before trial in *DiGerlando* from that in this case is significant it should be remembered that counsel for defendant sought and received a copy of the statement prior to trial and without objection. Presumably he was satisfied to receive it or he would not have asked for it. In the absence of a showing to the contrary it may also be presumed that the statement was received in ample time to avoid surprise and allow opportunity for preparation. Indeed, when compared with the statement given the police, there is nothing new in the second statement which should occasion any further investigation whatever. If further investigation was necessary there was ample time. The statement was short,

there were but two witnesses and it was used near the end of the trial which lasted several days. With substantial identity in the two confessions and the competency of the first established, we fail to see that any prejudice could result from the admission of the second.

Defendant's final contention is that the burglary charge should have been tried with the rape charge or not at all and that, in imposing multiple concurrent sentences, the trial court committed reversible error with respect to the burglary charge. In advancing this argument reliance is placed upon the provisions of sections 1—7(m), 3—3 and 3—4(b)(1) of the Criminal Code of 1961. (Ill. Rev. Stat. 1961, ch. 38, pars. 1—7(m), 3—3 and 3—4(b)(1). Section 1—7(m) allows consecutive sentences when a defendant has been convicted of two or more offenses which did not result from the same conduct but has been construed to prohibit consecutive or concurrent sentences when a person has been convicted of two offenses resulting from the same conduct. (See *People v. Raby*, 40 Ill.2d 392, 404.) After providing in subsection (a) that a defendant may be prosecuted for each offense when the same conduct establishes the commission of more than one offense, section 3(b) says that if the several offenses are known to the prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution except as provided in subsection (3) if they are based on the same act. Section 3—4(b)(1), as far as applicable here, provides that a prosecution is barred if the defendant was formerly prosecuted for a different offense or for the same offense based upon different facts if such former prosecution resulted in either a conviction or an acquittal and the subsequent prosecution is for an offense with which the defendant should have been charged on the former prosecution, as provided in section 3—3.

In construing these statutory provisions defendant claims that the words "same conduct" and "same act" should

be given the broad definition of "same general transaction". He cites a number of decisions which he says support his position, among them *People* v. *Schlenger*, 13 Ill.2d 63, 64-68. This case, decided in 1958 prior to the enactment of the present Criminal Code, involved an indictment containing two counts, one for armed robbery and one for grand larceny, which charged the robbery of Biagi and the taking of $200 and the theft of $200 from the same person on the same date. This court reversed the judgment and sentence on the larceny charge. In *People* v. *Golson*, 32 Ill.2d 398, where there were two charges of murder based upon homicides occurring in the course of the commission of a felony, we held that the conviction on the second charge must be reversed since there was but a single act of misconduct and the misconduct of the defendants in each case was identical. In *People* v. *Mullenhoff*, 33 Ill.2d 445, also relied upon by defendant, the State sought to prosecute the defendant for attempted rape after he had been found not guilty of attempted deviate sexual assault against the same person at the same time. We held that a conviction on the rape charge could not stand because both charges involved the identical occurrence and conduct of the defendant. *City of Chicago* v. *Hill*, 40 Ill.2d 130, holds that where convictions for obstructing traffic and disorderly conduct are based on the same act, *i.e.* sitting down in the street, the conviction for disorderly conduct and the sentence imposed will be reversed. *People* v. *Ritchie*, 66 Ill. App. 2d 302, holds that under section 1—7(m) convictions and sentences for both rape and burglary with intent to commit rape could not be sustained where the rape of the victim occurred after the forcible entry of her house trailer by the defendant.

From a careful consideration of the above cases relied upon by defendant we believe it to be perfectly clear that none of them, with the exception of *Ritchie*, supports the broad meaning of the terms "same conduct" and "same act" which defendant would ascribe to them. In each of the cases,

with the exception of *Ritchie,* it can fairly be said the offenses in question involved but a single act. On two occasions this court has observed that the decision of the Appellate Court, Fourth District, in the *Ritchie* case is questionable. (See, *People* v. *Ritchie,* 36 Ill.2d 392, 397; *People* v. *Raby,* 40 Ill.2d 392, 404.) In *People* v. *Weaver,* 93 Ill. App. 2d 311, the Appellate Court for the First District held that the charges of burglary with intent to commit rape and rape were separate and distinct offenses not arising from the same course of conduct so that the State was not restricted to one sentence under section 1—7(m), thus reaching a result which is directly in conflict with that of the Appellate Court, Fourth District, in *Ritchie.*

However proper the application of the above statutory provisions may be in cases which would involve double punishment for the same conduct where the same identical evidence is the basis for the finding of guilty of both charges, we believe they were not intended to cover situations in which more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof. Specifically, we are convinced that the statutory strictures have no application in this case where the charges are burglary and rape. These are separate and distinct crimes requiring entirely different proof to sustain them. The rape has no necessary connection with the burglary as is evident when we stop to consider that the burglary was complete before the defendants laid a hand on the victim. Had the defendants not embarked on an entirely separate course of conduct in making their sexual assault, the burglary would have occurred without any rape having been committed.

In conclusion we find that errors assigned are without merit and the judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.