THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ISAAC IKE, Defendant-Appellant.

(No. 71-272;

Fifth District—August 10, 1972.

Linda West Conley, of Defender Project, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the Circuit Court of St. Clair County the defendant herein was convicted of armed robbery and attempted murder. He was sentenced to the penitentiary for concurrent terms of not less than 10 nor more than 20 years for armed robbery and not less than 15 nor more than 20 years for attempted murder. On this appeal he contends that identification procedures were impermissibly suggestive; that proof of the robbery count was insufficient; that the attempted murder conviction should be reversed because it was merely a part of the armed robbery and arose out of the same conduct; and finally, that the sentences were excessive.

At about 9:30 o'clock in the evening on January 16, 1971, the Ace High Liquor Store, located in St. Clair County, was robbed and the clerk in charge was shot. Virginia Mark testified that she and a stock boy were alone in the store when three men, all carrying guns, entered. One of them approached her at the cash register with gun drawn, and told her he wanted the money. After she opened the register to comply he added that he also wanted the change. When she reached below the counter to get a paper bag to put it in, he shot her in the neck from a distance of three or four feet. Identifying defendant as the one who shot her, she stated that the light in the store was excellent, better than in the court room, and that she was face to face with him for two or three minutes, and that she was positive of her identification. The stock boy testified that as the three armed men entered he heard one of them say, "This is a hold-up". He was then ordered to lie on the floor but he caught a glimpse of the man accosting Mrs. Mark at the register and he thought he resembled defendant.

At a hearing on a motion to suppress and at the trial it was brought out that Mrs. Mark had originally told the police that her attacker was a slender, light skinned Negro about six feet tall. She stated that he wore no disguise, no hat, and no sun-glasses. She believed his hair was a little bushy but she did not remember any scars, mustache, goatee, beard, or sideburns. However, she thought he may have had a little facial hair on his chin. One week following the incident, while she was still in the hospital, Mrs. Mark picked out defendant's picture from a group of 10 or 11 pictures shown her by a detective; and then, two days later at home, she again picked out defendant's picture from the same set of pictures with the exception that one person's picture was omitted and another substituted for it. One month later she attended a line-up and identified defendant from a group of five men of approximately the same height, age, and color of skin.

██ From these facts defendant argues that due to Mrs. Mark's original vague description the subsequent police arranged photographic displays were improper, and that the line-up following the photographic procedures was unduly suggestive because by then she already knew defendant's name. We find no support in the record for this argument, nor are defendants' cited cases supportive of his position. In *People v. Holiday*, 47 Ill.2d 300, one witness was shown defendant's picture alone and another witness was shown pictures only of defendant and his accomplice. The court held that in view of the meager evidence in the record as to the opportunity of the witnesses to observe the one who did the shooting, the quality and strength of the identification testimony, and the circumstances of the photographic showings, it was necessary to remand for an evidentiary hearing on the total circumstances involved. In *People v. Magadanz*, 126 Ill.App.2d 335, the court found no independent origin for the in-court identification of the accused other than the highly suggestive and improper "show-up" where the only view of the accused by the witness was in a room with a number of detectives. In *People v. Kincy*, 72 Ill.App.2d 419, the Court found the record barren of any testimony of any witness who had even seen the face of the perpetrator of the crime.

 In contrast to the facts of these cases the eye witness here closely observed the defendant at very close range under excellent lighting conditions and for an appreciable period of time. One week later she twice picked out defendant's picture from sets of 10 or 11 pictures without any intimation of police suggestion, and then again she identified him in a line-up made up ideally of five men similar in appearance. It is true that in the line-up each man was asked to state his name, but according to both the witness and the police officer this occurred only after she had identified the defendant. Based on the totality of circumstances, as required by *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, we find no indication of any improper suggestive pre-trial procedures that might have given rise to a misidentification. To the contrary, and after full consideration of defendant's alibi evidence, we conclude that evidence leads one to an abiding conviction of defendant's guilt of attempted murder beyond a reasonable doubt. (See *People v. Watkins*, 3 Ill.App.3d 560.) We also reach the same conclusion on the robbery conviction, for even though there is no direct evidence of what money was taken the evidence is clear that at the demand of defendant Mrs. Mark did open the cash register; there was money in it for she was reaching for a paper bag in which to put it; and though she did not see him take it she testified she was sure it was taken. It is not essential to proof of robbery that a victim actually see the taking.

■■ Next defendant contends that convictions for two offenses arising out of the same conduct can not stand; that since there is no evidence that the shooting and the armed robbery were independently motivated or otherwise separable the attempted murder must be reversed. Though not specifically argued, this contention is directed toward an interpretation of section 2—4 of the Criminal Code defining "conduct", (Ill. Rev. Stat. ch. 38, par. 2—4), and section 1—7 (m) providing that a court may impose consecutive sentences for two or more offenses which did not result from the "same conduct". Ill. Rev. Stat. ch. 38, par. 1—7 (m).

This issue has been before the courts of Illinois a number of times. Defendant cites *People v. Stewart*, 45 Ill.2d 310, in which the accused in attempting a robbery hit his victim and knocked out several of his teeth. He was convicted on separate counts of aggravated battery and attempted robbery, and the court reversed the former on the grounds that the battery was merely a part of the attempted robbery and defendant's conduct was not separable. We take this to mean that under the facts of this particular case it was determined that force was an essential element to be shown in proving the offense of attempted robbery, and that, as such, the hitting was an integral and inseparable part of that crime. In other words, the same element of proof (force) was essential to both the robbery and battery. On this same theory multiple convictions have been disallowed in a number of analogous incidents. (See *e.g. People v. Scott*, 43 Ill.2d 135, burglary with intent to commit theft—burglary with intent to commit rape—burglary with intent to commit deviate sexual conduct; *People v. Duszkewycz*, 27 Ill.2d 257, rape—incest; *People v. Schlenger*, 13 Ill.2d 63, armed robbery—grand larceny.) The "same conduct" in these cases is obvious in that there were different offenses but the elements of proof were the same. An entirely different situation is presented where different offenses are committed in a single act, or in a series of acts, involving separate elements of proof. In *People v. Johnson*, 44 Ill.2d 463, the court upheld convictions for burglary and rape on the grounds that the two crimes were clearly distinct and required different elements of proof even though arising out of a series of closely related acts. See, *People v. Raby*, 40 Ill.2d 392, disorderly conduct—resisting arrest; *People v. Williams*, 3 Ill.App.3d 1, murder—armed robbery—attempted robbery; *People v. Berry*, 2 Ill.App.3d 760, attempted murder—robbery—attempted armed robbery—theft; *People v. Walker*, 2 Ill.App.3d 1026, rape—armed robbery—attempted murder.

The most recent pronouncement of our Supreme Court on this question is contained in *People v. Harper*, 50 Ill.2d 295. The defendant there was convicted of rape and robbery and it was argued that separate sentences were impermissible since both crimes arose out of the same

course of conduct. The court held that while it was true that the rape and robbery occurred in a series of acts committed at the same place and within a short time, it is equally true that they were separate offenses requiring separate elements of proof for which concurrent sentences were both constitutionally and statutorily permissible.

On the basis of the reasoning in these cases it seems clear that the robbery and attempted murder charged in the case before us constituted separate and distinct offenses requiring separate and distinct elements of proof. A robbery occurred and the force used was the threat of a gun. When the gun was discharged and the robbery victim was shot an additional element was added essential to proof of attempted murder but not to proof of robbery. This appears to be indisputable, but while we have been considering this case an opposite conclusion was reached in the Appellate Court of the First District in *People v. Hill* (1972), 6 Ill.App.3d 746. There the accused was convicted of armed robbery and murder and was sentenced to consecutive terms of 10 to 20 years and 50 to 100 years respectively. The court held that there was no evidence that the acts constituting the two offenses were independent or otherwise separable and therefore the armed robbery conviction must be reversed. We can not agree with this conclusion, nor with the reasoning upon which it is based. In support of its decision the court cited *People v. Baker,* 114 Ill.App.2d 450, in which the accused was convicted on a three count indictment charging armed robbery, aggravated battery using a deadly weapon, and aggravated battery causing great bodily harm. The victim had been struck from the rear, knocked down, and cut with a knife while the defendant took his watch and money. Defendant then proceeded to kick the victim about his head and shoulders until stopped by the arrival of the police. On these facts the court held that the initial striking of the victim constituted the use of force which was an element of the robbery; that, therefore, the count charging aggravated battery using a deadly weapon was part of the robbery and not a separate offense. (As noted earlier in our opinion, the same conclusion was reached in *People v. Stewart,* 45 Ill.2d 310, and we have no dispute with it.) But what the First District failed to mention in the *Hill* case is that the court in the *Baker* case then proceeded to discuss the second aggravated battery charge, the beating and kicking of the victim. On this count the court specifically held that this attack, even though arising out of the same conduct or transaction, constituted a separate and distinct offense, and the judgment, and sentence thereon, was affirmed together with the judgment and sentence on the robbery count.

It would appear that the First District in the *Hill* case has mis-

interpreted the distinction drawn in the *Baker* and *Stewart* cases and as a result has reached an erroneous conclusion. We can not follow it in the case before us. Rather we conclude here that though the robbery and attempted murder arose out of closely related acts of defendant they nonetheless constituted two separate and distinct offenses involving different elements of proof and the convictions and sentences imposed on each were proper.

Defendant presents one additional theory which seems to be that his personal motivation is determinative; that since his objective was robbery any other crime committed in the course of accomplishing his objective became merged with the robbery as part of the same transaction and prosecution must be restricted to that offense. The rationale of such an argument can only lead to irrational results. It deprives society of the right to determine accountability for criminal acts and instead grants to the criminal the right to avoid accountability for a second offense when perpetrated in the process of committing a first offense. We can not accept such a theory.

■■ Defendant's final contention is that the sentences are excessive. It is of course possible that defendant shot the victim because he thought she was reaching for a gun. The crimes here are extremely serious, however, the defendant has had a good work record and these are his first convictions. The sentences imposed should provide for the possibility of rehabilitation while at the same time affording society adequate protection. To conform to this standard we reduce the armed robbery sentence to a minimum of five years and a maximum of fifteen years and the attempted murder sentence to a minimum of seven years and a maximum of twenty years, the sentences to run concurrently.

Judgment affirmed as modified.

G. MORAN, P. J., and EBERSPACHER, J., concur.