THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES DANIEL BINKLEY, Defendant-Appellant.

(No. 73-168;

Fifth District—January 22, 1975.

Paul Bradley and Brenda Richey, both of State Appellate Defender's Office, of Chicago, for appellant.

Robert H. Howerton, State's Attorney, of Marion (William B. Ballard, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

In a bench trial in the Circuit Court of Williamson County defendant was convicted of a calculated criminal cannabis conspiracy and of possession of cannabis. (Ill. Rev. Stat. 1973, ch. 56½, pars. 709, 704(e).) He was sentenced to concurrent prison terms of 3 to 10 years and 1 to 3 years, respectively. In this appeal he contends (1) that the count of the indictment charging the conspiracy was insufficient in that it failed to allege the necessary element of an agreement, (2) that the evidence was insufficient to prove the material possessed and delivered was cannabis as defined by statute, and (3) that it was improper to convict and sentence defendant for both the conspiracy and the possession of cannabis.

Patricia Parker testified that on August 24, 1972, she, the defendant,

and her boyfriend, Toby Tyler, purchased 10 pounds of marijuana from a Leo Sadler in Nashville, Tennessee, for $170 a pound with defendant putting up three-fourths and Tyler one-fourth of this sum. They then took the marijuana to defendant's apartment in Carbondale, Illinois, passing through Williamson County on the way. After arriving in Carbondale at about 8 P.M. they cleaned and bagged the marijuana into ½-pound bags. Later that same evening they went to Chip Hugh's house in Carbondale and sold 7 pounds to various individuals for $240 per pound. She stated that defendant negotiated the sales while she, Tyler, and a number of other people were present. With the remaining 3 pounds still in their possession they returned to her apartment in Nashville and, counting their money, found they had $1600. They then purchased 10 pounds more and on August 25, with 13 pounds in their possession, returned to Carbondale, again passing through Williamson County. They went back to Hugh's house and with defendant's permission, Hugh took 3 pounds and went somewhere and sold it for $240 a pound. On his return he gave this money to defendant. Stan Guziec and Alex Mair then came to Hugh's house and bought 2 pounds from defendant at the same price. About 30 minutes later they returned complaining they were short 2 ounces. After a heated argument, defendant took back the marijuana and refunded their money. Later, with the remaining 10 pounds in their possession, the defendant, Miss Parker and Tyler drove out to a strip mine near Carbondale and hid 3 pounds. They then returned to defendant's apartment and Alex Mair came over in the early morning hours of August 26. Under an arrangement with defendant, he took 3 pounds and sold it. When he came back he turned the money over to defendant and bought 4 pounds more for himself. This exhausted their supply, with the exception of the 3 pounds hidden in the strip mine; so, arrangements were made with Mair to meet him the next day to supply him with an additional 13 pounds. The defendant, Miss Parker and Tyler then went back to Nashville to buy another 10 pounds, but Miss Parker got sick in Nashville and was unable to return with them to Carbondale.

Miss Parker further testified that she had previously used a variety of drugs, that she had seen and smoked marijuana and was familiar with it. She had smoked some of the substance they had transported from Nashville to Carbondale on August 24 and 25 and, in her opinion, the substance was marijuana.

Toby Tyler's mother and stepfather testified that when they became concerned about the disappearance of their son they talked to defendant in September, 1972. He told them that he and Toby had been dealing in marijuana in Carbondale for about a week, around the end of August. He told them some of the names of the persons to whom they had sold

marijuana, but they could only remember the name of Chip Hugh. Hugh, admitting that he was offered immunity for his testimony, stated that he knew the defendant, Miss Parker and Tyler and that in August, 1972, he had sold some "stuff" for them which was supposed to be marijuana. He said that he did not use any of it personally, but that he had smoked marijuana before, was familiar with its physical characteristics, and that the substance he sold looked like marijuana. On cross-examination he admitted that he could not identify marijuana from sight alone.

An investigator for the Tennessee Bureau of Identification testified that Miss Parker had shown him the house in Nashville where she said they had purchased the marijuana, and that after the issuance of a search warrant the individual identified by Miss Parker as Leo Sadler was arrested for possession of marijuana. A deputy sheriff from Williamson County testified that Miss Parker had directed him to the strip-mining area in Williamson County near Carbondale where the 3 pounds of marijuana had been hidden; however, no marijuana was found, and none of the substance alleged to have been marijuana was introduced into evidence.

Defendant's first contention is directed towards the sufficiency of the conspiracy count of the indictment which was worded in the language of the statute. (Ill. Rev. Stat. 1973, ch. 56½, par. 709(a).) It charged defendant with an unlawful calculated criminal cannabis conspiracy alleging that:

> "* * * on the 26th day of August, 1972, at and within the County of Williamson, State of Illinois, the defendant, Charles Daniel Binkley, as part of a conspiracy with two or more persons, Alex Mair, Toby Tyler, Patsy Parker, and Stan Guziec, did in violation of Sec. 705(d) of ch. 56½ Illinois Revised Statutes, knowingly and unlawfully deliver to Alex Mair more than 30 grams but not more than 500 grams of a substance containing Cannabis, otherwise than as authorized in the Cannabis Control Act, and he organized said violation in violation of Paragraph 709(a), Chapter 56½, Illinois Revised Statutes."

■■ Defendant concedes that an indictment is sufficient when it states the offense in the terms and language of the statute if it states the elements of the offense with sufficient particularity to apprise an accused of the crime charged so as to enable him to prepare his defense and plead any judgment in bar of a subsequent prosecution for the same offense. (*People v. Grieco*, 44 Ill.2d 407, 255 N.E.2d 897 (1970); *People v. McDavid*, 3 Ill.App.3d 169, 278 N.E.2d 182 (1971).) But, it is argued that since section 8—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 8—2) defines conspiracy as an offense in which one must "agree" with

others to its commission, the indictment should have specifically alleged such agreement. The argument seems to assign some magic to the word "agreement." It ignores the actual language used and the implications and meaning necessarily flowing from such language. The indictment charges that the offense was committed by defendant "as part of a conspiracy with two or more other persons." By definition a conspiracy is an agreement among conspirators, an act of conspiring together. It necessarily implies acting in concert, undertaking some joint action. In fact, it has been specifically held that while a common design is the essence of a conspiracy, it is not necessary to prove such common design by direct evidence of an agreement between the conspirators, but rather it is only necessary to show that they pursued a course tending toward the accomplishment of the object of which complaint is made. (*People v. Perry,* 23 Ill.2d 147, 177 N.E.2d 323 (1961).) Also, as stated in *People v. Holtz,* 294 Ill. 143, 128 N.E. 341 (1920), to justify the conclusion that a conspiracy existed there must be evidence of some agreement *or* some joint action toward accomplishing the object of the conspiracy. Considering these principles, we believe defendant's objection is unduly technical and unrealistic, and we conclude that the indictment as worded was sufficient to apprise defendant of the crime charged so as to enable him to prepare his defense and plead any judgment in bar of a future prosecution for the same offense.

Next, defendant contends that in the absence of a chemical analysis the evidence was insufficient to prove beyond a reasonable doubt that the substance possessed and delivered by defendant was cannabis, or marijuana, as defined by statute. It is argued that the evidence, including Miss Parker's testimony, was circumstantial only and without probative value. Defendant concedes that in *People v. Robinson,* 14 Ill.2d 325, 153 N.E.2d 65 (1958), our supreme court specifically refused to rule that a chemical analysis is the only means of proving a substance to be a narcotic. He attempts to distinguish that case on the grounds that there the testimony of the lay witnesses and former addicts was more substantial than in the case before us. He calls attention to the fact that in *Robinson* there was testimony that the substance had the same bitter taste as did the heroin the witnesses had previously used; that they had injected themselves using the same methods and paraphernalia as they had on previous occasions and that they had obtained the same reactions. In addition, an expert testified that an addict would come to know a narcotic by his reaction to it. We do not believe these distinguishing features are particularly significant, for each case must be judged on its own facts. In *United States v. Agueci,* 310 F.2d 817 (2nd Cir. 1962), the court stated:

"Just as with any other component of a crime, the existence of and dealing with narcotics may be proved by circumstantial evidence; there need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence furnished ground for inferring that the material in question was narcotics." 310 F.2d 817, 828.

In *Toliver v. United States*, 224 F.2d 742 (9th Cir. 1955), proof that a substance was heroin was held ample where it was based on evidence of the exorbitant price paid for a small amount of the substance; the fact that it was a powder; that the witness had been a user and had had previous transactions in narcotics; that he bought the substance as heroin and sold it to his customers as heroin and none of them complained. In *Ewing v. United States*, 386 F.2d 10 (9th Cir. 1967), a witness' conclusion that she had received marijuana was competent evidence where founded upon her prior experience, rolling the cigarette herself, seeing what it looked like and the fact that it made her "high."

As in *Robinson*, *Agueci*, *Toliver*, and *Ewing*, the evidence of the character of the substance here was partly direct and partly circumstantial. It was Miss Parker's informed, though perhaps not expert, opinion that the substance was marijuana. By her own admission, Miss Parker was experienced in the use of many drugs, including marijuana. Her opinion of the narcotic character of the substance possessed by the defendant and smoked by her was competent direct testimony tending to prove an element of the offense. Her testimony was supported by circumstantial evidence that defendant had bought the material for $170 a pound and had sold it for $240 a pound without complaint from the purchasers. In addition, Hugh testified that though he did not smoke any of the substance he sold to the defendant, he was familiar with marijuana and the substance he sold looked like marijuana. Miss Parker's testimony was further supported by the testimony of Mr. and Mrs. Tyler that defendant had told them personally that he and their son had been dealing in marijuana in Carbondale during the end of August, 1972, and that he mentioned names of some of the individuals to whom they had sold the marijuana. Considering all of these facts together, we find that they constitute ample proof sufficient for the court to find beyond a reasonable doubt that the substance involved was marijuana and that they wholly support the trial court's conclusion to that effect.

On the same point defendant also very briefly argues that there has been some recent evidence that there are three varieties of marijuana, *i.e.*, *cannabis sativa*, *cannabis indica* and *cannabis roderalis*. From this it is contended that since *cannabis sativa* was the only substance covered by the Cannabis Control Act it was incumbent upon the State to prove

the specific species involved here as *cannabis sativa.* We were directed to studies conducted on this question but we found them to be preliminary and speculative. Accordingly, and apart from the fact that the contention was not raised in the trial court and is therefore waived here, we conclude that the argument itself is without merit.

The defendant finally contends that the court erred in entering judgment and sentence on both the conspiracy and possession charges. The defendant relies on *People v. Schlenger,* 13 Ill.2d 63, 147 N.E.2d 316 (1958), and *People v. Stewart,* 45 Ill.2d 310, 259 N.E.2d 24 (1970), wherein our supreme court held that multiple conviction and sentences for acts which constituted a "single course of conduct" were improper where no independent motivation existed for the separate acts. Defendant argues that the offenses here involved a single course of conduct and that the conviction for possession of marijuana, the lesser offense, should be vacated. We feel, however, that defendant has misinterpreted the import of the supreme court cases. *Stewart* and *Schlenger, People v. Scott,* 43 Ill.2d 135, 25 N.E.2d 190 (1969), and the more recent cases of *People v. Lilly,* 56 Ill.2d 493, 309 N.E.2d (1974), and *People v. Hood,* 59 Ill.2d 315 (1974), involved multiple offenses arising from a *single act* and not a series of acts. In the case at bar, there were a series of acts culminating in the delivery of marijuana to Mair. In *People v. Whittington,* 46 Ill.2d 405, 265 N.E.2d 679 (1970), the court relied on *Stewart, Schlenger* and *Scott* and held that defendant's theft of a motor vehicle during an escape from the penitentiary constituted a single course of conduct and stated:

> "It was therefore improper for defendant to be sentenced on the theft charge." (46 Ill.2d 405, 410, 265 N.E.2d 679, 682).

Without further explanation, the court vacated both the sentence *and conviction* for theft.

Since *Whittington* was announced, section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4) was enacted by the legislature. Subsection (a) of that statute states in part:

> "The court shall not impose *consecutive* sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." (Emphasis added.)

The clear import of this statute appears to be that concurrent sentences for offenses arising from a single course of conduct are permissible. (See also *People v. Whittington,* 46 Ill.2d 405, 410, 265 N.E.2d 679, 682 (1970) (Mr. Justice Underwood's dissent).

■■ While we perceive a potential conflict between *Whittington* and the statute quoted above, we find it unnecessary to decide whether *Whit-*

*tington* has been superseded. The offenses here charged are separate and distinct. As we stated the test in *People v. Ike*, 7 Ill.App.3d 75, 286 N.E. 2d 391 (1972), where offenses result from a series of acts, though close in time, which require "separate and distinct" elements of proof, each offense may be punished separately. In the instant case, the possession as charged and proved was complete before the overt act of delivery began. The possession charge stemmed from August 25 while the overt act on which the conspiracy charge was based occurred on August 26. The conspiracy charge alleged delivery of not less than 30 grams and not more than 500 grams of marijuana. To support the possession charge as framed in the indictment, the State was required to prove possession of more than 500 grams. There can be little doubt that defendant possessed the marijuana as part of the conspiracy to unlawfully deliver it to Alex Mair. But to hold that since his objective was the unlawful delivery of the marijuana, any other offense was merely part of the same transaction is to reward the successful criminal. As stated in *Ike*:

> "The rationale of such an argument can only lead to irrational results. It deprives society of the right to determine accountability for criminal acts and instead grants to the criminal the right to avoid accountability for a second offense when perpetrated in the process of committing a first offense. We cannot accept such a theory." (7 Ill.App.3d 75, 81, 286 N.E.2d 391, 395.)

We conclude, therefore, that defendant was properly convicted and sentenced on both charges.

Judgment affirmed.

JONES, P. J., and CARTER, J., concur.