THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES R. ELAM, Defendant-Appellant.

Fifth District    No. 75-218

Opinion filed June 25, 1976.

G. J. MORAN, J., dissenting in part.

Stephen P. Hurley and A. Michael Kopec, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael J. Henshaw, State's Attorney, of Harrisburg (Bruce D. Irish, of Illinois State's Attorneys Association, and Theodore Slegesky, Law Student, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by defendant, James R. Elam, from judgments entered by the circuit court of Saline County following defendant's guilty pleas to the charges of attempt theft (over $150), criminal damage to property (over $150), unlawful possession of more than 30 grams but less than 500 grams of cannabis, and unlawful production of cannabis sativa plants. The pleas were not negotiated.

On the evening of May 18, 1974, defendant and two other men went to the Sahara Coal Company Mine Site No. 16 and took with them a rifle, a pair of bolt cutters and a saw. They were interrupted by a night watchman while in the process of removing 1,350 feet of copper wire from the mine site. The factual basis of the criminal damage to property plea showed that the men had broken the locks to a power substation at the site, shot out lightning arresters on a power pole with the rifle, cut down the power pole and cut the copper wire off the power pole. The total value of the pole, lightning arresters and locks was stated to be $181. The factual basis of the attempt theft plea showed that defendant had coiled the copper wire and was attempting to remove it when the night watchman arrived at the scene. The copper wire was valued at $864. As to the two cannabis charges, the prosecutor stated that from a search of the rear of defendant's residence on July 24, 1974, cannabis plants, weighing more than 30 grams but less than 500 grams, were found growing there.

On January 8, 1975, defendant pled guilty to the charge of criminal damage to property and on February 13, 1975, he pled guilty to the other three charges. It is undisputed that defendant was adequately represented by counsel and had been fully admonished by the trial court. After a sentence hearing on February 20, 1975, the court sentenced defendant to concurrent terms of one to three years imprisonment on the convictions for criminal damage to property, attempt theft and unlawful possession of cannabis and a concurrent term of 364 days' imprisonment on the conviction for unlawful production of cannabis sativa plants.

Defendant raises two issues for review: (1) whether he was erroneously convicted of the criminal damage to property charge because the conduct

constituting this crime arose out of the same conduct that constituted the attempt theft; and (2) whether the court erred in convicting him of both unlawful possession of cannabis and unlawful production of the cannabis sativa plant because both offenses arose out of the same act of growing the cannabis plants.

■■ It is well established that in Illinois a defendant may not be convicted of multiple offenses arising out of the same activity, course of conduct, transaction or act unless the conduct constituting the offenses is independently motivated or otherwise separable. *(People v. Schlenger,* 13 Ill. 2d 63, 147 N.E.2d 316; *People v. Whittington,* 46 Ill. 2d 405, 265 N.E.2d 679; *People v. Williams,* 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Coultas,* 30 Ill. App. 3d 81, 332 N.E.2d 169.) The test to determine whether a defendant's conduct was independently motivated is an objective one. An appraisal of the surrounding circumstances must be made in ascertaining a separate motivation. *(People v. Ike,* 7 Ill. App. 3d 75, 286 N.E.2d 391; *People v. Siglar,* 18 Ill. App. 381, 309 N.E.2d 710.) In *People v. Williams,* the defendant was convicted and sentenced for murder, burglary and armed robbery. Our Supreme Court followed *People v. Schlenger* in determining that the defendant had been improperly convicted and sentenced for burglary and armed robbery. The court stated:

> "The two men entered the Calderone home for the purpose of robbing the Calderones. Thus, although burglary and armed robbery involve different elements of proof and the men committed a series of acts, their unauthorized entry with the intent to commit theft and the actual theft by means of armed robbery constitute two offenses arising from the same conduct involved in robbing the Calderones. Only the conviction of the most serious of the two offenses, armed robbery, can stand, and the judgment and sentence on the burglary conviction must be reversed." (60 Ill. 2d 1, 14, 322 N.E.2d 819, 826.)

Nevertheless, as the court stated in *People v. Johnson,* 44 Ill. 2d 463, 475, 256 N.E.2d 343, 350, in holding that the convictions and sentences for burglary and rape were proper, cases such as *Schlenger:*

> "[W]ere not intended to cover situations in which more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof. * * * The rape has no necessary connection with the burglary as is evident when we stop to consider that the burglary was complete before the defendants laid a hand on the victim. Had the defendants not embarked on an entirely separate course of conduct in making the sexual assault, the burglary would have occurred without any rape having been committed."

The Supreme Court in *Williams* found that its decision in *Johnson* was

controlling in its holding that the defendant's convictions and sentences for murder and armed robbery were proper, even though the activity constituting both offenses arose from a series of closely related acts.

"The purpose of the entry was robbery, not murder, and that objective changed to murder only when the robbers were confronted by Mr. Calderone with a gun in his hand. Then, they chose to commit a separate act for the purpose of killing Mr. Calderone. That shooting can be viewed as a means of removing an obstacle to their original objective of robbery, but it is also evident that at least part of their reason for killing was to avoid injury or apprehension by Mr. Calderone." 60 Ill. 2d 1, 14, 322 N.E.2d 819, 826; see also *People v. Raby,* 40 Ill. 2d 392, 240 N.E.2d 595; *People v. Harper,* 50 Ill. 2d 296, 278 N.E.2d 771; *People v. Green,* 62 Ill. 2d 146, 340 N.E.2d 9.

In the instant appeal, defendant voluntarily pled guilty to all the offenses charged after full explanations and admonitions were given by the lower court. When a plea of guilty is voluntarily made, it admits every material fact alleged in the indictment and all the elements of the crime with which an accused is legally charged and it waives prior nonjurisdictional defects. (*People v. Wilfong,* 19 Ill. 2d 406, 168 N.E.2d 726; *People v. Siglar,* 18 Ill. App. 3d 381, 309 N.E.2d 710.) In *People v. Siglar,* concurrent sentences were imposed following negotiated guilty pleas by the defendant to the charges of escape, kidnapping, burglary, armed robbery and two counts of felony theft. The defendant appealed from the sentences.

We found that he was properly chargeable with only three offenses—escape, burglary and armed robbery, since there were only three instances when he was independently motivated and pursuing a single course of conduct. In answer to the State's contention that the defendant waived consideration of the issues presented, we noted that the defendant had only appealed from the sentences imposed. We held that while the defendant's guilty pleas may waive prior defects, it could not waive subsequent defects. Since the sentences had not been imposed until after the pleas were accepted we held that only the defendant's sentences for escape, burglary and armed robbery were properly imposed, however, all the charges against him were left standing.

In *People v. Harper,* 50 Ill. 2d 296, 278 N.E.2d 771, and *People v. Watson,* 31 Ill. App. 3d 774, 335 N.E.2d 20, the defendants also pled guilty pursuant to plea negotiations to crimes arising from closely related acts. However, in these cases the effect of the defendants' guilty pleas on the issues presented were not considered.

■■ In the case at bar, defendant's first contention is that he was

erroneously convicted of criminal damage to property and attempt theft because both crimes arose from the same course of conduct. We are of the opinion and we so hold that the convictions and sentences for these crimes were proper. The indictment charging him with criminal damage to property alleged that he " * * * did knowingly damage property * * * being copper wire, power pole, locks and lighting [*sic*] arrestors * * *." The indictment charging him with attempt theft alleged that he, " * * * with intent to commit the offense of Theft * * * was attempting to drag copper cable * * * from the site * * *." The facts alleged in the indictments and the elements of proof of each crime which defendant admitted by his guilty pleas were separate and distinct. Viewing these acts we cannot say that they were not independently motivated. There is no indication in the record that the damage done to the property was done for the purpose of perfecting a theft, with the exception of the cutting of the copper wires. Instead of being necessary and incidental to the attempt theft, we believe that the cutting down of the power pole, the shooting of the lightning arresters and the breaking of the locks established that the damage produced was useless destruction. These acts alone were sufficient to support defendant's guilty plea to the criminal damage to property charge. The conduct establishing the attempt theft consisted of defendant's attempt to remove the wire by coiling and dragging it. Defendant's attempt to take the copper wire bore little relation to the destructive force he exerted on the other property. Consequently, we affirm the convictions and sentences for these crimes.

■■ The State has conceded error to defendant's second contention. We concur. The record shows that the convictions and sentences for unlawful possession of cannabis and unlawful production of cannabis sativa plants arose out of the same act of cultivating the cannabis sativa plants at the rear of defendant's residence. The plants were alive and growing at the time that they were confiscated. For reasons of fundamental fairness, the conviction and sentence for unlawful production of cannabis sativa plants, the lesser offense, is vacated.

For the foregoing reasons, we affirm the judgments entered on the defendant's guilty pleas to the offenses of criminal damage to property, attempt theft and unlawful possession of cannabis. The conviction and sentence for the offense of unlawful production of cannabis sativa plants is vacated.

Affirmed in part; vacated in part.

KARNS, P. J., concurs.

710

Mr. JUSTICE GEORGE J. MORAN, dissenting in part:

I concur in the majority opinion, except that part which affirms the convictions of both criminal damage to property and attempted theft.