The People of the State of Illinois, Plaintiff-Appellee, *v.* Frank McDonald, Defendant-Appellant.

(No. 56559;

First District (2nd Division)—October 23, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and James T. J. Keating, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

A four-count indictment charged defendant and three other men with armed robbery and murder. Defendant elected to be tried by a jury. He was convicted of both offenses and sentenced to serve concurrent terms of 40 to 80 years. In this appeal he presents four issues. (1.) Whether the trial court erred in refusing to quash his arrest. (2.) Whether the trial court erred in refusing to suppress a written confession he made to the police. (3.) Whether the armed robbery and murder resulted from separable conduct so that he could be convicted and sentenced for both offenses. (4.) Whether the concurrent sentences of 40 to 80 years are excessive.

I.

On November 16, 1968 at about 6:30 P.M., George Cermak, a Summit, Illinois butcher, accompanied by James Kasik, an employee, left his shop carrying a brown paper bag containing the day's cash receipts. In the

rear and just outside, two men, one armed with a gun, shot Cermak, and a moment later, the other man took the bag with the money and a wallet from Cermak's pocket. Cermak died from the gun shot wound he received. Two days later, his wallet was found on Interstate Highway 55 near Central Avenue in Cook County. When its contents were examined, it contained a piece of paper on which, in some unknown person's handwriting, was the following information: the name "Mary Chester," a criminal court docket number and the amount of a bail bond. Summit police officers delivered the wallet to a brother-in-law of Cermak who told them that the piece of paper did not belong in it and that it was unlikely Cermak put it there. From this information, the officers surmised that the piece of paper was placed in the wallet by the person or persons who had robbed and killed Cermak.

Acting on this assumption, Summit policemen inquired of the Chicago police department and discovered that a Mary Chester was in custody on a child abandonment charge and that a month or so before, she, defendant and two other men, Saul Reed Colbert and Allen Nathaniel, were arrested on a burglary charge and released. Colbert and Nathaniel were known to Summit policemen. Photographs of the two men were obtained and shown to persons who were at or near the Cermak robbery. From this phase of their investigation, Summit policemen learned that Nathaniel and Colbert were seen in the area just before Cermak was killed. One person was able to give the police a description of Nathaniel's car and part of its license number. Having obtained this information, the police, on November 19, 1968, took the two men into custody. Nathaniel was questioned that day but he did not say anything about defendant. Colbert was also questioned but made no statement.

The following morning, November 20, Colbert was taken to the Oak Lawn, Illinois Court House. There, at about 9:50 A.M., in the presence of an assistant state's attorney, three Summit policemen and two members of the Cook County sheriff's police, he made a confession that was recorded verbatim by a court reporter. Colbert told the officials that he and defendant robbed Cermak; but, he said, it was defendant who shot and killed him. Based on Colbert's confession, Summit police officers, while in the Oak Lawn Court House, applied to a judge and obtained a warrant for defendant's arrest. At about 3:00 P.M. on November 20, 1968, the warrant was executed and defendant was arrested in Chicago. He was taken to the Summit police station where, later that afternoon, in the presence of several investigating officers, he dictated a three-page confession to a police department clerk who wrote it in long-hand. In the confession, defendant gave the details of how he and Colbert, on the evening of November 16, 1968, planned and executed the robbery

of Cermak; but he said it was Colbert who shot and killed him. After this confession was given the police, Allen Nathaniel gave them a statement in which he admitted a part in the Cermak robbery, implicated defendant, Colbert and a fourth man, Winston Fields.

Thereafter, defendant, Colbert, Nathaniel and Fields were jointly indicted for the robbery and murder of Cermak. Fields, apparently, was not apprehended; Nathaniel became a State witness; defendant and Colbert were held for trial. On December 2, 1970, defendant by counsel of his choice, made a motion to quash his arrest and suppress his confession on the grounds that he was illegally taken into custody and that his confession was involuntary. The motion was heard and there appeared as witnesses all the officers who investigated the Cermak killing, the assistant state's attorney who was present when Colbert confessed and the Summit police clerk who wrote defendant's confession. Defendant testified and through his counsel contended that his arrest had to be quashed because he was taken into custody without probable cause or with an improperly obtained warrant. He argued that Colbert's confession was coerced by the police; therefore, the warrant obtained on the strength of it was invalid. As to his own confession, defendant contended that it was involuntary because it was made only after his life was threatened by police officers who interrogated him. After hearing the evidence, which included a copy of the warrant and copies of the confessions, the trial court denied defendant's motion.

## II.

■■ The evidence which the court heard proved, without contradiction, that defendant was arrested on the authority of a warrant. As one allegedly aggrieved by a claimed unlawful seizure of his person, defendant, by the motion he made, had the right to show that his arrest, although with a warrant, was illegal because the warrant was insufficient on its face, was issued without probable cause or was illegally executed. (Ill. Rev. Stat. 1967, ch. 38, par. 114—12(a)(2).) It was defendant's burden to prove that the warrant was invalid. (Ill. Rev. Stat. 1967, ch. 38, par. 114—12(b).) Defendant, however, did not do so. In fact, he did not show that in any way the warrant was illegally obtained or unlawfully executed. Therefore, the trial court did not err in refusing to quash his arrest. Ill. Rev. Stat. 1967, ch. 38, par. 107—2(a); 5 Am. Jur. 2d Arrest § 4.

In support of his motion to suppress, defendant testified that he confessed to the Cermak robbery and murder only because Captain Anthony M. Corbo of the Summit police department, armed with two guns, told him to confess, threatened him and put him in fear of his life by telling

624

other officers to take him behind the police station and shoot him. Captain Corbo appeared, denied he ever wore two guns while in uniform and denied he told defendant to confess, threatened him or told other officers to harm him. Officer Steve Yurinich was called as defendant's witness and he corroborated Captain Corbo's denial concerning the guns. Yurinich testified that although he had seen Corbo on duty many times, he had never seen the captain with two guns. Concerning the confession, defendant insisted that he signed only the first page; the signatures on the other two pages, he said, were forgeries. Visual examination of the three-page document, however, shows that the signature on all the pages is the same. The station clerk who wrote the confession for defendant testified that she saw him sign each page after he had told her what to write. When he testified in support of his motion, defendant admitted that each page of the confession contained what he had said. Yet, when he testified before the jury, he told them that the clerk wrote what Sergeant Michael Corbitt told her.

It was the burden of the State to prove, by a preponderance of the evidence, that defendant's confession on November 20, 1968, was voluntary. (*Lego v. Twomey* (1972), 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619; *People v. Jackson,* 41 Ill.2d 102, 242 N.E.2d 160; Ill. Rev. Stat. 1967, ch. 38, par. 114—11(d).) However, when the State introduced evidence which made out a prima facie case that the confession was voluntary, the burden of going forward with evidence and showing that the confession was involuntary shifted to defendant and would have shifted back to the State had he made such a showing. (See *People v. Davis,* 10 Ill.2d 430, 140 N.E.2d 675; *People v. Smith,* 71 Ill.App.2d 446, 219 N.E.2d 82.) In this case, the State introduced into evidence the testimony of every person involved in the taking of defendant's confession. They contradicted defendant and refuted his claim that he was coerced into making the confession. Moreover, defendant's own testimony was self-contradictory. It is well established that the question whether a confession was voluntary is for the trial court to decide and we will not disturb its decision unless it can be said that its finding is manifestly against the weight of the evidence. (*People v. Lego,* 32 Ill.2d 76, 203 N.E.2d 875; *People v. Kirk,* 36 Ill.2d 292, 222 N.E.2d 498.) The finding in this case that defendant's confession was voluntary is amply supported by the evidence. Therefore, the trial court did not err in refusing to suppress his confession. *People v. Higgins,* 50 Ill.2d 221, 278 N.E.2d 68.

The State's evidence proved that in the evening of November 16, 1968, defendant and Saul Reed Colbert accosted George Cermak just outside his butcher shop in Summit, Illinois and Colbert shot Cermak. A few moments after Cermak fell to the ground, defendant, at Colbert's

direction, took from Cermak a wallet and a brown paper bag that contained money. Cermak died a short time later. On this evidence the jury convicted defendant of two offenses: armed robbery and murder. It is defendant's contention that the conduct by which the armed robbery was committed was the same as that which produced the murder. Therefore, defendant argues that it was error to convict and sentence him for both offenses. He invokes the rule that "[w]hen a person is convicted of two or more offenses which arise out of the same conduct, he cannot be sentenced for both, either concurrently or consecutively." *People v. Sykes*, 10 Ill.App.3d 657, 658, 295 N.E.2d 323; *People v. Duszkewycz*, 27 Ill.2d 257, 189 N.E.2d 299; Ill. Rev. Stat. 1967, ch. 38, par. 1—7(m).

■■■ We have examined the evidence and conclude that the conduct by which defendant and Colbert shot Cermak was separable and independently motivated from the conduct by which they robbed him of his wallet and his money. (See *People v. Ike*, 7 Ill.App.3d 75, 286 N.E.2d 391; *People v. Williams*, 3 Ill.App.3d 1, 279 N.E.2d 100.) It is true that concurrent sentences for crimes arising from the same conduct cannot be imposed under the laws of this State. (See *People v. Duszkewycz*, 27 Ill.2d 257, 189 N.E.2d 299.) "On the other hand, where each of several crimes, although committed in the course of a single transaction, involves clearly divisible conduct, separate sentences are proper." (*People v. Smith*, 6 Ill.App.3d 259, 264, 285 N.E.2d 460; compare *People v. Baker*, 114 Ill.App.2d 450, 252 N.E.2d 693.) Therefore, since the conduct by which the armed robbery and murder were committed was clearly divisible and separable, defendant could be convicted and sentenced for both offenses.

The remaining issue is whether the concurrent sentences of 40 to 80 years for armed robbery and murder are excessive. It was shown to the trial court that at the time of the offenses, defendant was 27 years old and a high school graduate who had received two years of college education. His criminal record consisted of two misdemeanor convictions. Based on these facts, defendant contends that the sentences are excessive. He urges us to reduce them. See Supreme Court Rule 615(b)(4), Ill. Rev. Stat. 1971, ch. 110A, par. 615(b)(4).

■■ In imposing a sentence, a trial court must consider the punishment warranted by the circumstances of the particular case, the protection of the public and the defendant's potential for rehabilitation. (*People v. Buell*, 120 Ill.App.2d 367, 256 N.E.2d 845.) A sentence that is within statutory limits will not be disturbed on appeal unless it clearly constitutes a great departure from fundamental law, its spirit and purpose; or, it manifestly violates the constitutional proscription that all criminal penalties be proportioned to the nature of the offense. See *People v.*

*Taylor,* 33 Ill.2d 417, 424, 211 N.E.2d 673; *People v. Loyd,* 125 Ill.App.2d 196, 260 N.E.2d 63.

■■ In this case, it was proved by the State that defendant and Saul Colbert planned to rob George Cermak. By means at their disposal, they learned that on the evening of November 16, 1968, a Saturday, Cermak would leave his place of business, armed for his protection, to secure the proceeds of his day's labor. Defendant and Colbert, equipped with a lethal weapon, intended to rob Cermak. They accomplished their criminal purpose and in the process committed murder. The court which was in a superior position during the trial and the hearing in aggravation and mitigation to determine the punishment to be imposed, decided that defendant should serve concurrent sentences of 40 to 80 years, the same sentences given Colbert who was tried separately. In our judgment, the sentences are not excessive. (See *People v. Horton* (1973), 14 Ill.App.3d 957; compare *People v. Williams,* 131 Ill.App.2d 149, 264 N.E.2d 901; *People v. Chambers,* 112 Ill.App.2d 347, 251 N.E.2d 362.) We find no reason to disturb them. The judgments are affirmed.

Affirmed.

HAYES and DOWNING, JJ., concur.