THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RALPH LUMPKIN, JR., Defendant-Appellant.

(No. 59748;

First District (3rd Division)—May 1, 1975.

· Paul Bradley and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, and Perry L. Fuller, Dennis J. Horan, and Jean Hamm, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Ralph Lumpkin, Jr., was found guilty, after a jury trial, of the offenses of murder and attempted armed robbery, in violation of sections 9—1 and 8—4 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, pars. 9—1, 8—4). He was sentenced to concurrent terms of 50 years to 60 years on the murder conviction and 10 to 14 years on the attempted armed robbery conviction. On appeal defendant contends that insufficient evidence was adduced to establish beyond a reasonable doubt his identity as an assailant, his accountability for the offenses, and his guilt of the offense of attempted armed robbery. He also contends that his convictions for murder and attempted armed robbery were improper since both offenses arose out of the same conduct, and that the sentences imposed thereon are excessive.

Shortly after commencement of the trial a *voir dire* examination of the State's prospective witness, David Thomas, aged 17 years, was conducted outside the presence of the jury. That examination disclosed that the witness was recalcitrant and his answers varied substantially from testimony given by him at a preliminary hearing. The court declared him a court's witness, appointed counsel for him, and admonished counsel to advise him of the consequences of his contradictory testimony.

The trial then continued in the presence of the jury.

On December 22, 1971, at approximately 10 P.M., David Thomas was a passenger in the first car of a three-car elevated Chicago Transit Authority train, seated directly behind a passenger later identified as the victim, Robert Shea. At 58th Street and Calumet Avenue five young men boarded the train together, two of them taking seats near Shea and three standing in the rear of the car. Thomas identified the defendant at trial as one of the five youths, but was unable to state whether defendant had taken a seat or had remained standing. One of the youths was heard to ask "Now?" and another to answer, "No, not now." Later, three of them surrounded Shea; one held a gun to his head and said, "Give up, Holmes." Shea pushed the gun aside and it discharged; it was placed to his head a second time and he again pushed it away, and it again discharged. The gun discharged a third time as it was again put to Shea's head and he fell back, bleeding. The five youths then ran into another car.

David Thomas was uncertain where defendant was located at the time of the shooting, nor did he see him in possession of a gun at that time. When one of the shots ricocheted and struck Thomas' fingernail he ducked for cover, and after the shooting stopped he ran from the scene as did everyone else. Before the shooting Thomas had been nodding but was not asleep; he had not been drinking. Over defense objection he was permitted to answer questions which indicated that he had known the defendant prior to the date of the incident.

Mrs. Virginia Hicks testified for the State that she was a passenger in the second car of the train in question and observed four or five youths run from the first car through the one she was in and into the last car of the train. One of them, whom she identified at trial as the defendant, was carrying a gun and "walking real knock-kneed." They remained in the last car about 5 minutes, during which time they switched clothing, then returned to the second car where they talked with the conductor. They then returned to the first car and left the train at the next stop. The witness looked into the first car and saw that a man had been shot. She later reported her observations to the police, identified the defendant out of photographs shown to her by the police, and picked him out of a lineup.

Mrs. Hicks described the gun she had seen in defendant's hand; she testified that she had described him to the police as being of "medium height, between five and six feet" tall, but she could not recall having told the police that he was "pigeon-toed" as well as "knock-kneed." She had had a good look at the defendant as he ran through the car; she did not know what the youths were running from.

Three police officers testified for the State. Their independent investiga-

tions of the shooting disclosed that the deceased was found in the first car of the train; that there was blood on the floor of that car and two bullet holes in its side; and that the inside of the train was lighted by overhead lighting. It was also brought out in their testimony that David Thomas and Virginia Hicks were shown police photographs, after which defendant was placed in a lineup and later charged with murder. It was stipulated that the deceased had been 40 years of age and in good physical condition, and that he died of a single bullet to the brain.

In a rather unusual procedure the defendant took the witness stand, related his name, and was physically offered into evidence as an exhibit. He then rested his case.

Defendant initially contends that the identification testimony of David Thomas and Virginia Hicks was insufficient, arguing that neither witness had known the defendant prior to the date of the shooting nor had described a prominent scar on his face. He also argues that those witnesses did not have adequate opportunity to observe the assailants, since David Thomas had been almost asleep as the incident began and later "ducked for cover," and that Mrs. Hicks observed the youths only as they ran rapidly through the car in which she was a passenger.

■■ It is the duty of the trier of fact to determine whether an accused has been sufficiently identified as the offender, based upon the credibility of the identification witnesses and the certainty of their testimony. (*People v. Bennett* (1973), 9 Ill.App.3d 1021, 293 N.E.2d 687.) The testimony of an identification witness will be strengthened to the extent of his prior acquaintance, if any, with the accused. *People v. Williams* (1968), 104 Ill.App.2d 329, 244 N.E.2d 347.

■■ David Thomas had ample opportunity to observe the assailants during the incident. It is true that he had been nodding off to sleep and sought cover as the shooting commenced, but his location in the seat directly behind the victim, together with the lighted condition of the car, afforded him adequate position and opportunity to observe the assault. He overheard members of the group voice comments which apparently concerned the timing of the planned robbery. The record also discloses that defendant had been known to the witness prior to the date of the shooting. Although defendant complains of the manner in which such evidence was elicited from the witness, the fact of such prior acquaintance was argued to the jury during the State's closing arguments, without defense objection. The record further discloses that Mrs. Hicks was in a good position to observe the defendant. She saw him running through the car in which she was seated; she saw him enter and remain for several minutes in the last car; and she saw him re-enter the second car before leaving the train. She also made a photographic identification

of the defendant and picked him out of a lineup after the incident. The matters raised by defendant as casting doubt upon the testimony of the identification witnesses were resolved by the jury. The testimony of those witnesses was clear and positive and unshaken on cross-examination; it sufficiently supports the finding of the jury that the defendant was one of the five youths involved in the shooting.

■■ Defendant next argues that the evidence failed to demonstrate his accountability for the offenses beyond a reasonable doubt. On the contrary, the evidence placed defendant at the scene of the shooting as an active participant in the offense. He was seen boarding the train with the group of youths involved in the shooting; he was seen carrying a gun and running from the scene with the group after the shooting; he was observed exchanging clothing with others in the group in an apparent effort to confuse possible identification by eyewitnesses; and he was seen re-entering the area of the shooting and leaving the train with the same group. The facts demonstrated a common design by the group to rob the victim, resulting in his death; defendant's participation with them in acts furthering that unlawful design demonstrated that he was more than an innocent bystander, as he now claims. Ill. Rev. Stat. 1973, ch. 38, par. 5—2; *People v. Jones* (1973), 12 Ill.App.3d 643, 299 N.E.2d 77; *People v. Richardson* (1965), 32 Ill.2d 472, 207 N.E.2d 478; *People v. Hill* (1968), 39 Ill.2d 125, 233 N.E.2d 367.

It is unnecessary to discuss defendant's contention relating to the sufficiency of the evidence adduced as to the offense of attempted armed robbery. The judgment and sentence entered upon the verdict therein must be vacated, inasmuch as it constitutes a lesser offense which arose out of the same conduct as the offense of murder.

■■ The State, in its brief and upon oral argument, concedes that a defendant may not be convicted of multiple offenses arising out of the same act or the same conduct. (*People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E. 2d 1.) But the State argues that the victim was killed while "in the process" of being robbed, rendering the two offenses separate and distinct. Cases such as *Lilly* do not prohibit separate convictions and sentences for armed robbery and murder where the activity constituting both offenses was a series of very closely related acts "and the crimes are clearly distinct and require different elements of proof." (*People v. Williams* (1975), 60 Ill.2d 1, 322 N.E.2d 819, citing *People v. Johnson* (1970), 44 Ill.2d 463, 475, 256 N.E.2d 343.) However, as in the case of *People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601, the victim here was killed while resisting an attempted armed robbery, which rendered the attempt and the murder the result of the same conduct involved in robbing the victim. The offenses here are not separate and distinct. The judgment and

sentence on the offense of attempted armed robbery must therefore be vacated.

The final contention raised by defendant is that the sentences imposed are excessive. Inasmuch as the judgment and sentence imposed upon the verdict of guilty of attempted armed robbery will be vacated, it is necessary to consider only the sentence of 50 to 60 years imposed upon the murder conviction.

■■ While the record discloses that defendant's past, in and of itself, would not appear to have warranted a sentence of the magnitude imposed by the trial court, when the circumstances of the homicide are considered, involving the clearly deliberate killing of an innocent person after repeated but unsuccessful attempts to frighten him into submitting to a planned robbery, the sentence imposed by the trial court was justified. The trial court was in a superior position to determine the nature of the penalty to be imposed; in light of the circumstances of the case it cannot be said that the court abused its discretion in that regard. *People v. McDonald* (1973), 15 Ill.App.3d 620, 305 N.E.2d 69.

For the reasons stated, the judgment and sentence entered by the trial court upon the verdict of guilty of attempted armed robbery is vacated; the judgment and sentence entered by the trial court upon the verdict of guilty of murder is affirmed.

Judgment of attempted armed robbery vacated; judgment of murder affirmed.

DEMPSEY and McNAMARA, JJ., concur.