THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE BOSTICK, Defendant-Appellant.

First District (2nd Division)   No. 77-539

Opinion filed May 16, 1978.

Ralph Ruebner and Rebecca J. Davidson, both of State Appellate Defender's Office, and Julius L. Echeles, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Rimas F. Cernius, and Thomas V. Gainer, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BROWN delivered the opinion of the court:

Following a bench trial, the defendant, George Bostick, was found guilty on two counts of arson (Ill. Rev. Stat. 1975, ch. 38, pars. 20—1(a) and 20—1(b)), and sentenced to concurrent terms of 2 to 6 years. Defendant contends that (1) the trial court erred when it failed to determine whether he understandingly and intelligently waived his right to a jury trial; (2) the evidence was not sufficient to identify him or connect him to the crime; and (3) separate judgments on the charges of arson (par. 20—1(a)) and arson with intent to defraud an insurer (par. 20—1(b)) could not be imposed because both convictions arose from a single act.

The record shows that on February 28, 1976, at approximately 5:10 p.m., a residence at 1165 South Elmwood, Oak Park, Illinois, was partially destroyed by fire. Alvin Bowyer testified that he sold the premises on contract to the defendant, whom he knew by the name of George L. Fostick, in 1974, and received as the "mortgagee" of record a copy of a homeowner's insurance policy issued to the defendant. He added that after the fire, the defendant sent him five payments on the "mortgage," four of which were by checks drawn on a closed account.

Captain Robert Sible of the Oak Park Fire Department testified that when he arrived at the residence he saw flames coming from the first-floor windows and a minute later they were coming out of the second-floor windows on the north side of the house. After the fire was extinguished he discovered partially burned rags in the house which had a definite odor of a flammable substance. He added that there had been a fire at the same residence on the previous day. David Lloyd, a fire investigator, who testified as an expert witness, said that all electrical circuitry and panels were found in satisfactory condition. He said that there were at least five points of origin of the fire, and that in his opinion they were not of accidental origin, but were deliberately set.

Defendant's neighbor, Fay Douglas, testified that at 5:15 p.m. on February 28, 1976, she saw the defendant pass by her house on the other side of the street. He was walking in a southerly direction and was wearing a hat and colored sunglasses. She had seen him at least 10 times previous to the day of the fire.

Celine Kelly, a next-door neighbor to defendant, testified that she was in her living room when she heard the door slam in the house next door. She looked out of her window and saw the defendant's face in profile for a few seconds as he proceeded to walk out to the sidewalk. She watched

him for about a minute or so from her front porch. She added that it was light outside and that the defendant was wearing a light jacket and tan pants. She said she had seen the defendant many times during the 2 years he had lived in the house. Within minutes her doorbell rang and she again went to her front porch were she saw flames leaping from the window of the defendant's house.

Police officer Ronald Ballarini, testified that on February 29, 1976, he went to the home of Mr. and Mrs. Zvetina in Oak Park, to inquire about the defendant because he was engaged to their niece. Mrs. Zvetina told him she had not seen the defendant, and gave the officer permission to search her home. When he tried the pantry door, it opened partially, but was pushed shut again. The officer forced the door open and found the defendant kneeling on the floor inside the pantry. Defendant was taken to the police station where he denied knowledge of the fire and denied being near the scene of his home on February 28, 1976.

Police detective David Smith testified that he was present when defendant denied knowledge of the fire and denied being near the scene of his home on February 28, 1976. However, he further testified that he saw the defendant at approximaely 5:30 p.m. that day, in the vicinity of Elmwood and Roosevelt Road, and that defendant was watching the fire burn. He recalled that defendant was wearing a light coat, darker trousers and no sunglasses, but could not recall if he was wearing a hat. He added that it was fairly dark outside, but the corner was well lighted.

The State's final witness was Al Klafeta, the owner of a State Farm insurance agency, who testified that the defendant, whom he knew by the name of George L. Fostick, came to his office on July 21, 1975, to apply for insurance on the residence at 1165 South Elmwood, Oak Park. He stated that on October 31, 1975, the defendant again came to his office and asked him to assign the insurance policy to George Charles Larimer. Defendant indicated that he had an opportunity to sell the house to George Larimer, that he had also paid the "mortgage," and that no "mortgagee" should be named on the policy. On February 25, 1976, the defendant again came to his office and requested a copy of the assigned insurance policy.

The defense presented three witnesses. Officer Ballarini was again called to testify that in late October of 1975, he went to the defendant's residence at 1165 South Elmwood to investigate an obscene and abusive typewritten note addressed to the defendant which threatened his life and the life of his dog. A week or 10 days later, the witness again went to the defendant's home and saw another typewritten letter which he said was inside his mailbox and contained threats to burn the house down if something was not done with the dog. The letters were not signed, had no postmark, and purportedly came from "The Concerned Citizens."

Mina Zvetina testified that the defendant lived in her home from the early part of December 1975 until he was arrested. She stated that on February 28, 1976, she returned home at 4 p.m. from grocery shopping, and found defendant in the house. She, her husband and the defendant then played cards until 6 p.m., when she fixed dinner. Thereafter they played more cards until they went to bed.

The defendant testified in his own behalf and admitted that he had used the names of George L. Fostick and George L. Bostick, and stated that since January 1976 he had been using the name of George L. Larimer. He stated that after getting three threatening notes and a sympathy card in the mail in December 1975 he moved to the home of Mrs. Zvetina in the latter part of December 1975. He testified that on February 28, 1976, he left the Zvetina home at noon and returned at 2 p.m.; he then slept until the Zvetinas came in around 5:30 p.m. They ate dinner together and proceeded to play cards the rest of the evening. He denied being at his residence at 1165 South Elmwood on February 28, 1976, or near Roosevelt and South Elmwood between 5 and 5:30 p.m. that day. He admitted signing the State Farm application for insurance in the name of George L. Fostick and further admitted endorsing the assignment of insurance policy to have the policy assigned to George L. Larimer. He denied that he asked Mr. Klafeta to remove the name of Al Bowyer as "mortgagee" from the policy or that he told Mr. Klafeta he had paid the "mortgage."

■■ Defendant first contends that the trial court erred when it failed to determine whether he understandingly, voluntarily and intelligently waived his right to a jury trial. When an accused and his counsel, in the presence of the accused, states that a jury is waived, a knowing and understanding waiver of jury trial may be inferred, since the court is entitled to rely on the professional responsibility of the attorney. An accused who permits his attorney, in his presence and without objection, to waive his right to a jury trial, is deemed to have acquiesced in, and to be bound by, his attorney's action. *People v. Sailor* (1969), 43 Ill. 2d 256, 260 N.E.2d 397.

■■ In the instant case, not only did the defendant's attorney advise the court that the defendant had requested a bench trial, but the defendant himself informed the court that he would waive a jury trial and he signed the jury waiver form. Defendant now will not be permitted to complain of an alleged error which was invited by his behavior and that of his attorney. *People v. Melero* (1st Dist. 1968), 99 Ill. App. 3d 208, 211, 240 N.E.2d 756.

Defendant next contends that there was not sufficient evidence connecting him to the arson, and that the identification testimony of his two neighbors, who placed him near the scene of the fire, was suspect.

The testimony of a single identification witness is sufficient to support a conviction if the witness viewed the accused under circumstances that would permit a positive identification (*People v. Jones* (1975), 60 Ill. 2d 300, 307, 325 N.E.2d 601), and such identification will be strengthened to the extent of his prior acquaintance, if any, with the accused. *People v. Lumpkin* (1st Dist. 1975), 28 Ill. App. 3d 710, 713, 329 N.E.2d 262.

██ The record indicates that Mrs. Kelly, defendant's next-door neighbor, saw the profile of his face after she heard the door slam in his house. In addition, she watched him as he walked south down the street away from her. Mrs. Douglas saw the defendant from her window just a few minutes later when he passed her house on the opposite side of the street. Both of these witnesses knew the defendant, and they testified that it was not dark outside. Although there were some inconsistencies as to whether the defendant was wearing a hat and sunglasses, such inconsistencies do not necessarily render invalid an identification by a witness, but rather go to the weight to be afforded such testimony by the trier of fact. (*People v. Winston* (4th Dist. 1975), 28 Ill. App. 3d 237, 239, 328 N.E.2d 49.) The weight and credibility to be afforded a witness' testimony is a determination for the trier of fact and, unless that determination is so unreasonable as to raise a reasonable doubt of defendants' guilt, it will not be disturbed on appeal. (*People v. Harrison* (1st Dist. 1978), 57 Ill. App. 3d 9, 15, 372 N.E.2d 915.) We find no basis to conclude that a reasonable doubt of defendant's guilt exists.

Finally, defendant contends that the trial court erred in imposing judgments on both counts of arson since they arose from a single act. We agree. The Illinois Supreme Court in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, analyzed the propriety of multiple convictions and concurrent sentences thereon, and stated as follows:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intnded to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." 66 Ill. 2d 551, 566.

██ In the instant case the offenses of which the defendant stands

convicted are carved from the same physical act of damaging by fire the real property located at 1165 South Elmwood in Oak Park, Illinois, and they may be distinguished only by the mental state of the accused and his intention in igniting the fire. That the defendant may have made certain misrepresentations to his insurer prior to the destruction of the property does not mandate a contrary result since it was the act of arson which gave rise to both charges. Multiple convictions and the imposition of multiple sentences are improper under these circumstances.

For the reasons stated, the judgment of the circuit court of Cook County for arson to defraud an insurer (par. 20—1(b)) is vacated, and the judgment for arson is affirmed.

Affirmed in part and vacated in part.

STAMOS, P. J., and DOWNING, J., concur.