THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MONICA GLISSON, Defendant-Appellant.

Fifth District   No. 5—99—0723

───

Opinion filed August 7, 2001.—Rehearing denied August 20, 2001.

Daniel M. Kirwan and Lawrence J. O'Neill, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Joseph Jackson, State's Attorney, of Metropolis (Norbert J. Goetten, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

On March 31, 1999, Monica Glisson (defendant) was charged with the following offenses: count I, chemical breakdown of an illicit controlled substance, and count II, misdemeanor theft. The jury found her guilty on both counts, and she was sentenced to 18 months of probation and 30 days in jail. She contends that the State failed to prove her guilty of either offense and that the cumulative effect of the numerous errors at her trial denied her a fair trial. She requests an outright reversal or a new trial. In addition, defendant filed a supplemental brief contending that the conviction on count I should be vacated because the statute under which she was charged was repealed. We agree. We vacate the conviction on count I, and we reverse as to count II.

## FACTS

The following facts were revealed during the trial. Just past midnight on March 10, 1999, Massac County sheriff's deputy Kent Miles was on routine patrol on Highway 45. While he was on Highway 45 near Strawberry Shortcut Road, he saw a vehicle in the distance. It was stopped on the road near the intersection of Highway 45 and Deer

Run Road. He watched an individual close the trunk and get in the passenger side of the vehicle. The vehicle then pulled out and drove down Highway 45.

As Miles followed the vehicle on Highway 45, he ran a check of the plates and waited for the reply from the dispatcher. About five minutes later, after following the car for several miles, Miles activated his emergency lights and stopped the car for illegally stopping on the highway. He spoke with both defendant, the driver, and Joseph Draffen, the passenger. He ran a check of defendant's license and insurance information, and he ran Draffen's name through the computer. He also called for backup, and Deputy Richard Douglas arrived.

The deputies asked defendant why she had stopped her car on the highway. She explained that she and the passenger had argued and that she had left him at a nearby restaurant about 40 minutes earlier but then decided to go find him. While the deputies were speaking with defendant, Deputy Douglas noticed that a key was in the keyhole for the trunk of the vehicle. Douglas asked defendant for permission to search the vehicle, and she refused because it belonged to her mother. According to Douglas, he then touched the key and the trunk automatically opened. Both deputies testified that there was a faint odor of anhydrous ammonia during the traffic stop and that the smell became very strong when the trunk opened.

Inside the trunk was a five-gallon bucket sealed with duct tape. Later it was determined that the bucket contained several sheets, a small cooler that held the alleged anhydrous ammonia, a respirator mask, and a stick wrapped with duct tape. Chief deputy sheriff Ted Holder also arrived at the scene. The Southern Illinois Drug Task Force was contacted to send officers who were trained in the handling and removal of anhydrous ammonia. Officers Dean Hamilton and Rick Griffey arrived at the scene. Hamilton removed the bucket from the trunk, opened it, opened the small cooler, and disposed of the alleged anhydrous ammonia.

## COUNT I

In defendant's supplemental brief she has requested that this court vacate her conviction on count I because the statute under which she was convicted was repealed. At the time of the events described above, section 401.5(a—5) of the Illinois Controlled Substances Act provided as follows: "It is unlawful for any person to possess any substance with the intent to use the substance to facilitate the manufacture of any controlled or counterfeit substance or controlled substance analog other than as authorized by this Act." 720 ILCS 570/401.5(a—5) (West 1998). The statute was amended, effective January

1, 2000, when the legislature added subsection (c), which states, "This Section does not apply to the manufacture of methamphetamine or to the possession of any methamphetamine[-]manufacturing chemicals with the intent to manufacture methamphetamine or any salt of an optical isomer of methamphetamine, or an analog of methamphetamine." 720 ILCS 570/401.5(c) (West Supp. 1999). Two distinct questions must be answered to resolve this issue: first, whether the statutory provision for the offense was repealed outright and, second, whether a savings clause applies.

●1 When the legislature passes a repealing act and does not substitute anything else for it, "the effect is to obliterate such act as if it had never been passed." *Show of Shows, Inc. v. Illinois Liquor Control Comm'n*, 86 Ill. App. 2d 109, 117, 230 N.E.2d 268, 272 (1967). This " 'stops all pending actions where the repeal finds them.' " *Show of Shows, Inc.*, 86 Ill. App. 2d at 117, 230 N.E.2d at 272, quoting *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 373, 21 N.E.2d 318, 321 (1939). Therefore, if no final relief has been granted prior to the time the repeal is effective, it cannot be granted afterwards. *Show of Shows, Inc.*, 86 Ill. App. 2d at 117, 230 N.E.2d at 272. This holds true even when a judgment has been entered and the cause is pending on appeal, because the reviewing court must apply the law in force when its decision is rendered. *Show of Shows, Inc.*, 86 Ill. App. 2d at 117, 230 N.E.2d at 272.

The State argues that the statute was not repealed outright but that the substance of it was merely transferred to new provisions. Specifically, the State contends that section 102(z—1) of the Illinois Controlled Substances Act (Act) was amended to add a definition for "methamphetamine[-]manufacturing chemical" (720 ILCS 570/ 102(z—1) (West Supp. 1999)) and that section 401 of the Act was amended to include the unlawfulness of possessing "any methamphetamine[-]manufacturing chemical listed in paragraph (z—1) of Section 102" (720 ILCS 570/401 (West Supp. 1999)). In addition, the legislature created a new offense in section 21—1.5 of the Criminal Code of 1961 that made it unlawful to tamper with anhydrous ammonia equipment. 720 ILCS 5/21—1.5 (West Supp. 1999).

When reading these new provisions, however, we cannot find a crime of chemical breakdown of an illicit controlled substance. Although the State argues that the new provisions merely rewrite section 401.5(a—5) of the Act and thereby transfer the offense, we conclude that the statutory provision for the offense was repealed outright. We must therefore treat it as if it had never existed, unless the statute contained a savings clause.

If the statute contained a savings clause, the conviction must be affirmed because the statutory prohibition was in effect at the time of the offense. The statute contained no explicit savings clause. The State argues, however, that the general statutory savings clause applies.

•2 Section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2000)) applies to criminal cases. *People v. Tanner*, 27 Ill. 2d 82, 84, 188 N.E.2d 42, 43 (1963). This provision states that a conviction entered after a statute has been repealed is still valid so long as the offense was committed while the statute was in effect. 5 ILCS 70/4 (West 2000); *Tanner*, 27 Ill. 2d at 84, 188 N.E.2d at 43. There is no question that the offense occurred during the one year that the statutory prohibition was in effect. The general savings clause, however, has no application to repeals. *Randall v. Wal-Mart Stores, Inc.*, 284 Ill. App. 3d 970, 974, 673 N.E.2d 452, 455 (1996). Therefore, since there was no savings clause in the statute and the general savings clause does not apply, we must treat the statutory prohibition as if it never existed. We vacate the conviction on count I. In view of our ruling on this issue, we do not need to reach defendant's additional arguments regarding count I.

## COUNT II

•3 In count II defendant was charged under section 16—1(a)(1)(A) of the Criminal Code of 1961, which states: "A person commits theft when he knowingly: (1) Obtains or exerts unauthorized control over property of the owner *** and (A) Intends to deprive the owner permanently of the use or benefit of the property." 720 ILCS 5/16—1(a)(1)(A) (West 1998). Defendant was accused under an accountability theory. Defendant argues that the State did not prove her guilty of theft beyond a reasonable doubt.

Although the State is correct that an appellate challenge to the sufficiency of the evidence is a "formidable task," that does not mean that it is an impossible one. We may reverse defendant's conviction only if, after viewing the evidence in the light most favorable to the prosecution, we conclude that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999).

It is unnecessary for us to examine every element of the offense of theft in this case. The *corpus delicti* in the crime of theft is proof of injury or loss and criminal agency. *People v. Friedland*, 202 Ill. App. 3d 1094, 1102, 560 N.E.2d 1012, 1018 (1990). The State failed to prove Fruitbelt, Inc.'s ownership of the anhydrous ammonia, and therefore, the State failed to prove an injury or loss to Fruitbelt, Inc.

The evidence presented at the trial indicated that no anhydrous

ammonia had been taken from Fruitbelt, Inc., on the night in question. The testimony revealed that the gauges on Fruitbelt, Inc.'s tanks registered no loss, there was no odor of leaking anhydrous ammonia near the tanks, and none of the hoses were cut. There must be proof of actual ownership of the anhydrous ammonia before there can be theft of the anhydrous ammonia. "Proving that there was in fact an actual owner *** who had a superior possessory interest *** [is] essential to proving the defendant guilty of theft. Without proof of an identified 'owner,' there is no real proof the property was stolen." *People v. Karraker*, 261 Ill. App. 3d 942, 957, 633 N.E.2d 1250, 1260 (1994).

Since the *corpus delicti* of the offense was not proved by the State, we conclude that no rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Therefore, we reverse the conviction on count II.

## CONCLUSION

For the foregoing reasons, we vacate defendant's conviction on count I, chemical breakdown of an illicit controlled substance, and we reverse defendant's conviction on count II, misdemeanor theft.

Vacated in part and reversed in part.

HOPKINS and GOLDENHERSH, JJ., concur.