Docket No. 92482–Agenda 15–September 2002.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MONICA GLISSON, Appellee.

Opinion filed December 5, 2002.

JUSTICE GARMAN delivered the opinion of the court:

Following a jury trial, defendant, Monica Glisson, was convicted of chemical breakdown of illicit controlled substance pursuant to section 401.5(a–5) of the Illinois Controlled Substances Act (720 ILCS 570/401.5(a–5) (West 1998)) and misdemeanor theft; judgment was entered November 3, 1999. Effective January 1, 2000, the General Assembly added a subsection to the Illinois Controlled Substances Act exempting defendant’s conduct from criminal liability. 720 ILCS 570/401.5(c) (West 2000). Both parties agree that this amendment, in effect, repealed the crime of possession with the intent to manufacture the illicit controlled substance methamphetamine from the section on chemical breakdown of illicit controlled substance. The appellate court vacated defendant’s conviction for chemical breakdown of illicit controlled substance and reversed defendant’s conviction for misdemeanor theft. 324 Ill. App. 3d 249, 253-54. Before this court, the State challenges only the vacatur of the conviction for chemical breakdown of illicit controlled substance. More specifically, the issue presented for review by this court is whether the general savings clause of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2000)) applies to repeals.

I. BACKGROUND

Shortly after midnight on March 10, 1999, Massac County sheriff’s deputy Kent Miles, while on routine patrol on Highway 45, observed a vehicle stopped on the road. The vehicle was about three hundred yards from the Fruitbelt Services Company, which housed tanks of anhydrous ammonia. Miles watched a person close the trunk and enter the passenger side of the vehicle. He followed the vehicle after it pulled out and drove down Highway 45. After checking the vehicle’s plates, Miles initiated a traffic stop for illegally stopping on the highway. He detected the faint odor of anhydrous ammonia during the traffic stop. Miles spoke with defendant, who was driving, and the passenger, Joseph Draffen. He checked defendant’s license and insurance information and ran Draffen’s name through his computer. Miles called for backup, and Deputy Richard Douglas arrived shortly thereafter.

As defendant explained the reason she had been stopped on the highway, Douglas noticed a key in the keyhole of the trunk. After defendant refused permission to search the car, Douglas touched the key and the trunk automatically opened. The officers had been trained that if anhydrous ammonia is in an enclosed space, the area should be ventilated as much as possible given the volatility of the material. The smell of anhydrous ammonia became much stronger when the trunk was opened. The State Police Drug Task Force was called to assist in the handling of the anhydrous ammonia, and Officers Dean Hamilton and Rick Griffey were dispatched. Inside the trunk was a five-gallon bucket sealed with duct tape. The officers also found a cooler containing anhydrous ammonia, a respirator mask, and a piece of wood wrapped with duct tape inside the trunk. Hamilton disposed of the anhydrous ammonia.

At trial, Douglas testified on the basis of his training that anhydrous ammonia is one of the antecedents in the production of methamphetamine. The only legitimate use of anhydrous ammonia is to fertilize corn; for this purpose, large quantities are required. The jury returned a guilty verdict on both counts. While the case was pending on direct appeal, the General Assembly adopted section 401.5(c), which removed from sanction the possession of methamphetamine manufacturing chemicals with the intent to manufacture methamphetamine. 720 ILCS 570/401.5(c) (West 2000). The appellate court vacated defendant’s conviction for chemical breakdown of illicit controlled substance (720 ILCS 570/401.5(a–5) (West 1998)) because the statute defining the offense of which defendant was convicted had been repealed. 324 Ill. App. 3d at 253. We granted leave to appeal pursuant to Rule 315 (177 Ill. 2d R. 315).

II. ANALYSIS

Effective after the date of the relevant conduct and defendant’s conviction, the General Assembly passed section 401.5(c), which provides: “This Section does not apply to the possession of any methamphetamine manufacturing chemicals with the intent to manufacture methamphetamine or any salt of an optical isomer of methamphetamine, or an analog of methamphetamine.” 720 ILCS 570/401.5(c) (West 2000). This change repealed the crime of which defendant was convicted. No specific savings clause was passed with section 401.5(c). Therefore, the sole issue before this court is whether the general savings clause of section 4 (5 ILCS 70/4 (West 2000)) preserves the conviction for chemical breakdown of illicit controlled substance despite the subsequent repeal of the statutory prohibition of the conduct in question while defendant’s conviction was pending on direct appeal. Because this issue is one of statutory interpretation, this court reviews the question 
de novo
. 
Paris v. Feder
, 179 Ill. 2d 173, 177-78 (1997).

At common law, the repeal of a penal statute abated prosecutions that had not reached final judgment, unless other authority supported the continuation of pending prosecutions. 
United States v. Chambers
, 291 U.S. 217, 223, 78 L. Ed. 763, 765-66, 54 S. Ct. 434, 435 (1934); 
People v. Bilderback
, 9 Ill. 2d 175, 177 (1956). The common law doctrine established a presumption of abatement for nonfinal prosecutions for courts to apply where the legislature was silent. 
Hamm v. City of Rock Hill
, 379 U.S. 306, 322, 13 L. Ed. 2d 300, 311, 85 S. Ct. 384, 394-95 (1964) (Harlan, J., dissenting).

Dissatisfaction with the common law rule developed because the conviction and punishment of similarly situated defendants could be disparate solely because the proceedings of one had moved more quickly and had become final before the change in the law. 
Bilderback
, 9 Ill. 2d at 181. This problem was addressed through the passage of general savings clause legislation, section 4, which reversed the common law presumption. 
People v. Chupich
, 53 Ill. 2d 572, 583 (1973); 
Bilderback
, 9 Ill. 2d at 181. The Illinois courts rarely have interpreted section 4 as it relates to repeal of criminal statutes because the General Assembly infrequently decriminalizes behavior.

A. Statutory Construction of Section 4

The primary concern of the court when interpreting a statute is to give effect to the intent of the legislature. 
Paris
, 179 Ill. 2d at 177. Whenever possible, the court applies the plain and ordinary meaning of the statutory language. 
People ex rel. Devine v. $30,700.00 United States Currency
, 199 Ill. 2d 142, 150 (2002). Only where the language of the statute is ambiguous may the court resort to other aids of statutory construction. 
People v. O’Brien
, 197 Ill. 2d 88, 90-91 (2001). In addition, where a statute is clear and unambiguous, courts cannot read into the statute limitations, exceptions, or other conditions not expressed by the legislature. 
People ex rel. Devine
, 199 Ill. 2d at 150-51. The court should evaluate a statutory provision as a whole rather than reading phrases in isolation. 
Paris
, 179 Ill. 2d at 177. The court should construe a statute to give a reasonable meaning to all words and sentences so that no part is rendered superfluous. 
Sylvester v. Industrial Comm’n
, 197 Ill. 2d 225, 232 (2001). Finally, courts may assume that the legislature did not intend absurdity, inconvenience or injustice to result from legislation. 
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 40 (2001).

Section 4, the general savings clause of Illinois, first passed in 1874, states:

“No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, 
or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding
. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. 
This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act
.” (Emphases added.) 5 ILCS 70/4 (West 2000).

In 
People v. Speroni
,
(footnote: 1) the appellate court interpreted “ ‘No new law shall be construed,’ ” at the start of the provision, and the first italicized phrase to mean that section 4 is applicable only to amendments and not to outright repeals. 
People v. Speroni
, 273 Ill. App. 572, 577-78 (1934). Defendant argues that, under 
Speroni
, section 4 should not preserve her conviction because the crime of which defendant was convicted was repealed outright. This court, however, has criticized the 
Speroni
 analysis in 
Bilderback
. We said: “This conclusion [by the 
Speroni
 court] of course wholly disregards the last sentence of section 4.” 
Bilderback
, 9 Ill. 2d at 180.

Statutory construction principles require the court to apply the plain and ordinary meaning of the statutory language whenever possible. 
People ex. rel Devine
, 199 Ill. 2d at 150. This final sentence provides that section 4 applies to both express and implied repeals, regardless of where the repealing language is located. This sentence confirms the broad applicability of section 4 rather than restricts it, as defendant suggests. We now expressly hold what we implied in 
Bilderback
: section 4 applies to both outright repeals and amendments.

In addition, we give a different interpretation to the first italicized phrase of section 4 than did the 
Speroni
 court. This is the first time we have interpreted this phrase directly. When interpreting a statute, the court should evaluate a statutory provision as a whole rather than reading phrases in isolation. 
O’Brien
, 197 Ill. 2d at 91. The court should construe a statute to give a reasonable meaning to all words and sentences so that no part is rendered superfluous. 
Sylvester
, 197 Ill. 2d at 232. Section 4 starts with a prohibition on construing a new statute to affect penalties, punishments, or rights accrued; this forbids retroactive application of substantive changes to statutes. The italicized portion, beginning with “save only,” allows proceedings to conform to the present law; this allows retroactive application of procedural changes to statutes. Therefore, we read the first italicized part of section 4 above to require that retroactive application of amendments or repeals in criminal statutes is permissible only if such changes are procedural in nature. We expressly reject the holding of 
Speroni
 to the extent that it is inconsistent with this interpretation.

We note that our present interpretation of this clause in section 4 is consistent with an interpretation of nearly identical statutory language in our sister state of West Virginia. West Virginia’s general savings clause provides in part:

“The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, 
save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place
, unless otherwise specially provided ***.” (Emphasis added.) W. Va. Code §2–2–8 (2002).

When interpreting the italicized portion of this provision, the Supreme Court of Appeals of West Virginia explained:

“Even should it be conceded, as claimed, that Sec. 15 of Chap. 144 of the Code was repealed by the Act of 1920-21, the offense if committed before the repeal is kept alive and also the penalty. The procedure alone is affected; it must conform to the new law as far as practicable.” 
State v. Sanney
, 91 W. Va. 477, 480-81, 113 S.E. 762, 764 (1922).

Only procedural changes are given retroactive application under this substantially identical savings clause language.

B. Section 4 Applied to the Present Case

Both parties agree that the legislature in effect repealed the crime of possession with the intent to manufacture methamphetamine from the section on chemical breakdown of illicit controlled substance, of which defendant was convicted. Clearly, this statutory change is not of a procedural nature. This is a substantive change to the scope of the crime of chemical breakdown of illicit controlled substance. As such, section 4 bars retroactive application of the statutory change repealing the offense of which defendant was convicted. Section 4 preserves defendant’s conviction for chemical breakdown of illicit controlled substance because section 401.5(a–5) criminalized defendant’s conduct at the time the conduct occurred.

C. Changes to Special Remedial Statutes

The appellate court in this case stated: “The general savings clause *** has no application to repeals.” 324 Ill. App. 3d at 253, citing 
Randall v. Wal-Mart Stores, Inc.
, 284 Ill. App. 3d 970, 974 (1996). However, the 
Randall
 case and the cases that are cited to support this assertion address statutory changes to special remedial statutes. 
Randall
, 284 Ill. App. 3d at 973; 
Shelton v. City of Chicago
, 42 Ill. 2d 468, 474 (1969); 
People ex rel. Eitel v. Lindheimer
, 371 Ill. 367, 373-75 (1939). Special remedial statues are statutory provisions that are purely remedial or procedural in nature; they do not involve vested rights. 
Randall
, 284 Ill. App. 3d at 973.

In criminal cases in which the statutory changes affect only procedure, Illinois courts hold that the changes can be applied retroactively. See, 
e.g.
, 
People v. Anderson
, 53 Ill. 2d 437, 438, 440-41 (1973) (noting that lengthening the speedy-trial deadline after defendant was charged was procedural and therefore could be applied retroactively). In contrast, however, courts apply section 4 and bar retroactive application where statutory changes alter or repeal the crime itself. For example, in 
People v. Tanner
, 27 Ill. 2d 82 (1963), this court reviewed an indictment that was quashed based on the repeal of the charging statute by the Criminal Code of 1961 (“new Code”). We held that the prosecution could continue despite the repeal. The new Code, however, also incorporated section 4 by reference explicitly, which we acknowledged in our analysis. 
Tanner
, 27 Ill. 2d at 83-85. Soon after, the First District of the appellate court evaluated a case in which the repealing statute did not refer expressly to section 4 in 
People v. DeStefano
, 64 Ill. App. 2d 389 (1965). In that case, the charging statute was repealed after defendant’s conduct but before his indictment. The court found that 
Tanner
 did not require that a repealing statute explicitly refer to section 4 for that provision to apply. Citing 
Bilderback
, the court held that the prosecution could proceed. 
DeStefano
, 64 Ill. App. 2d at 398. Therefore, the appellate court and defendant incorrectly assert that section 4 is inapplicable to all repeals. In accordance with our interpretation of section 4, courts can apply retroactively statutory changes to procedural or remedial provisions, whether they are outright repeals or amendments. Section 4 prohibits retroactive application of statutory changes that affect substantive provisions or vested rights.

III. CONCLUSION

We hold that the general savings clause of Illinois, section 4 (5 ILCS 70/4 (West 2000)), applies to preserve defendant’s conviction despite the fact that, while her appeal was pending, the legislature repealed the statute describing the crime for which she was convicted without a specific savings clause. Therefore, we reverse the appellate court in part and vacate the order of the appellate court vacating defendant’s conviction for chemical breakdown of illicit controlled substance; we affirm the appellate court order reversing defendant’s conviction for misdemeanor theft, which was not challenged before this court. We remand the cause to the appellate court to consider the issues raised by defendant challenging the chemical breakdown of illicit controlled substance conviction before that court that were not reached in light of its interpretation of section 4, if that court deems it to be appropriate. The appellate court then may remand the cause to the circuit court for further proceedings if necessary. See 
Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 146-47 (1999).

Appellate court judgment vacated in part

and affirmed in part;

cause remanded.

FOOTNOTES
1:     
1
Appellate opinions before 1935 have no binding force on Illinois courts. 
Bryson v. New America Publications, Inc.
, 174 Ill. 2d 77, 95 (1996).