(text box: 1) NO. 5-99-0723

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Massac County.

)

)  No. 99-CF-29

) 

MONICA GLISSON, )  Honorable 

)  Terry J. Foster,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE CHAPMAN
(footnote: 1) delivered the opinion of the court:

In March 1999, the defendant, Monica Glisson, was pulled over for illegally stopping on a highway.  As a result of this stop, officers discovered a cooler containing anhydrous ammonia in the trunk of the car she was driving.  Anhydrous ammonia is an ingredient in methamphetamine, and the stop occurred in the immediate vicinity of anhydrous ammonia storage tanks owned by Fruitbelt, Inc. (Fruitbelt).  The defendant was charged with one count each of theft (720 ILCS 5/16-1(a)(1)(A) (West 1998)) and chemical breakdown of an illicit controlled substance (720 ILCS 570/401.5(a-5) (West 1998) (repealed in relevant part by Pub. Act 91-403, §5, eff. January 1, 2000)).  She was convicted on both counts and sentenced to 18 months in prison on the chemical breakdown charge and 30 days in jail on the theft count.  

On the defendant's first appeal to this court, we reversed her conviction for theft, finding that the State had failed to prove beyond a reasonable doubt that the anhydrous ammonia found in her car belonged to Fruitbelt.  
People v. Glisson
, 324 Ill. App. 3d 249, 253, 754 N.E.2d 444, 448 (2001).  We also vacated her conviction for chemical breakdown of an illicit controlled substance, finding that the statute under which she was charged was to be treated as if it had never existed because it had been repealed without the legislature enacting a replacement.  
Glisson
, 324 Ill. App. 3d at 253, 754 N.E.2d at 447.  The State appealed from the portion of our opinion vacating the defendant's conviction for chemical breakdown of an illicit controlled substance.  The Illinois Supreme Court reversed our holding and remanded the cause to this court to consider the contentions of error that our disposition did not require us to address.  
People v. Glisson
, 202 Ill. 2d 499, 509-10, 782 N.E.2d 251, 257-58 (2002).  Specifically, the defendant argued that (1) the State failed to prove her guilty beyond a reasonable doubt, (2) the court erred in admitting two exhibits without foundation, (3) she was prejudiced by misstatements of the evidence in the prosecutor's closing argument, and (4) she received ineffective assistance of counsel.  We now consider these arguments and affirm the defendant's conviction.

The events leading to the discovery of the anhydrous ammonia unfolded as follows.  Shortly after midnight on March 30, 1999, Massac County Deputy Sheriff Kent Miles was driving on Highway 45 on routine patrol.  He observed a vehicle stopped in the roadway near anhydrous ammonia storage tanks owned by Fruitbelt.  Deputy Miles noticed the brake light at the top of the rear windshield go dark.  As he approached the vehicle, he saw a man close the trunk and enter the passenger side of the car.  The car then drove away.  Deputy Miles followed the car and ran the license plate number through his computer before putting on his lights and pulling the car over.

Deputy Miles testified that the defendant, who was 17 years old at the time, appeared more nervous than drivers normally are when stopped for a traffic violation.  He asked her why she had stopped in the roadway.  She explained that she and her boyfriend, passenger Joseph Draffen, had argued and that she had stopped her car and let him out.  Then, feeling bad, she went back to pick him up.  Although it is not entirely clear when Deputy Miles first noticed it, he testified that he could detect the faint odor of anhydrous ammonia from outside the car.  He radioed for backup, and Deputy Richard Douglas responded.

Deputy Douglas arrived at the scene at approximately 12:40 a.m.  He was familiar with Draffen, whom he knew to be a suspect in previous thefts of anhydrous ammonia from Fruitbelt.  Deputy Douglas also detected the faint odor of anhydrous ammonia from outside the defendant's car.  

When asked for permission to search the car, the defendant refused, stating that the car belonged to her mother and that she did not think she had the authority to consent to a search.  According to Deputy Douglas, the key to the trunk was in the keyhole, and when he simply touched the key, the trunk popped open.  According to the defendant, however, she saw Deputy Douglas turn the key to open the trunk.  When the trunk was open, the odor of anhydrous ammonia became stronger.

Chief Deputy Ted Holder and Southern Illinois Drug Task Force Inspectors Dean Hamilton and Ricky Griffey were also called to the scene.  Hamilton, who wore protective gear, removed a bucket from the trunk of the car.  The bucket was sealed with duct tape.  Inside the bucket was a cooler that, according to the State's witnesses, contained a substance they identified by its odor as anhydrous ammonia.  

The State charged the defendant the next day with one count each of theft and chemical breakdown of an illicit controlled substance.  She stood trial in July 1999 and was convicted on both counts.  As previously noted, we reversed her theft conviction and vacated her conviction for chemical breakdown of an illicit controlled substance.  Because the supreme court reversed our finding that the statute under which the defendant was convicted was not applicable due to its subsequent repeal, we now consider her remaining challenges to that conviction.

The defendant first argues that the State failed to prove her guilty beyond a reasonable doubt because it failed to present sufficient evidence that the substance in the cooler was, in fact, anhydrous ammonia.  As the defendant correctly contends, the identity of an illicit controlled substance is an element of the offense that the State is required to prove beyond a reasonable doubt.  See 
People v. Park
, 72 Ill. 2d 203, 211, 380 N.E.2d 795, 799 (1978).  Often, that proof comes in the form of laboratory tests.  Here, the substance found in the cooler was not submitted to any such testing.  One officer testified that forensic labs will not accept anhydrous ammonia for testing because it is a hazardous substance.  He further testified that, although there is a field test that can measure the presence of anhydrous ammonia vapor in the air, the Southern Illinois Drug Task Force does not have such a test.  Thus, the only evidence that the substance was anhydrous ammonia was the testimony of three officers that they smelled the odor of anhydrous ammonia, which they described as distinctive and "unmistakable".  In support of her argument that this testimony is insufficient, the defendant cites 
People v. Hagberg
, 192 Ill. 2d 29, 733 N.E.2d 1271 (2000); 
People v. Jones
, 174 Ill. 2d 427, 675 N.E.2d 99 (1996); 
People v. Newberry
, 166 Ill. 2d 310, 652 N.E.2d 288 (1995); and 
People v. Brown
, 3 Ill. App. 3d 879, 279 N.E.2d 382 (1972).  In all of those cases, courts found that the State had failed to prove that a substance found in a defendant's possession was in fact what the State alleged it to be. 

The State argues that these cases are distinguishable because (1) they involve substances for which there is an accurate scientific test available, while no such test exists for anhydrous ammonia, and (2) they involve substances that cannot be readily identified through the senses, while anhydrous ammonia has a distinctive odor.  In support of its position, the State cites 
People v. Letsos
, 203 Ill. App. 3d 443, 561 N.E.2d 371 (1990).  There, the court found that evidence that an officer at the scene had smelled gasoline was sufficient to convict the defendant of discharging a contaminant into a storm sewer in violation of the Illinois Environmental Protection Act.  
Letsos
, 203 Ill. App. 3d at 452, 561 N.E.2d at 377.

We find the cases cited by both parties distinguishable.  In the State's case, 
Letsos
, there was no issue regarding the composition of the substance the officers had observed the defendant pumping into a storm sewer.  The defendant, who had purchased a piece of property formerly used as a gas station, was pumping the contents of storage tanks on the property into a storm sewer.  It turned out that the storage tanks contained both gasoline and water.  The defendant alleged that he began the pumping believing that the tanks contained only water.  
Letsos
, 203 Ill. App. 3d at 444-45, 561 N.E.2d at 372.  The testimony of a police officer that he smelled gasoline was offered to refute this contention, not to prove that the tank contained gasoline, a proposition the defendant did not dispute.  Thus, we find the case inapplicable to the issues before us.

In 
Hagberg
, the only evidence that a substance found on the defendant was cocaine was the testimony of a police officer about a field test he had performed on the substance.  The supreme court found this evidence insufficient because the officer could not recall the type of test he had used, what color it was supposed to turn to indicate a positive result, or what color it actually did turn.  The court found this testimony insufficient because it was "vague and speculative".  
Hagberg
, 192 Ill. 2d at 34, 733 N.E.2d at 1274.  In 
Jones
, the contents of two of the five packets of a substance found in the defendant's possession tested positive for cocaine, while the remaining three packets were not tested.  
Jones
, 174 Ill. 2d at 428, 675 N.E.2d at 100.  The supreme court held that the evidence was insufficient to support an inference that the remaining three packets likewise contained cocaine because the five packets were not sufficiently homogenous to support that inference beyond a reasonable doubt.  
Jones
, 174 Ill. 2d at 430, 675 N.E.2d at 101.  Significantly, in both cases, the supreme court expressly declined to hold that evidence other than a laboratory test could never be sufficient to support a finding that a substance is in fact the controlled substance in question.  
Hagberg
, 192 Ill. 2d at 33, 733 N.E.2d at 1273; 
Jones
, 174 Ill. 2d at 429, 675 N.E.2d at 100.

Brown
 dealt with a conviction for transporting an open bottle of liquor in an automobile and driving while under the influence.  The bottle of whiskey that the arresting officer claimed to have taken from the defendant was admitted into evidence, and the arresting officer was permitted to smell the contents of the bottle in court and identify it as alcohol.  
Brown
, 3 Ill. App. 3d at 881, 279 N.E.2d at 384.  On appeal, the court held that the bottle should not have been admitted due to the State's failure to establish a chain of custody over the bottle adequate to ensure that the evidence had not been tampered with.  
Brown
, 3 Ill. App. 3d at 881, 279 N.E.2d at 384.  

The court did not discuss the propriety of the officer's testimony regarding the contents of the bottle; however, after finding the bottle itself inadmissible, the court held that the remaining evidence was insufficient to show that the bottle the defendant had with him in his car when he was stopped in fact contained alcohol.  
Brown
, 3 Ill. App. 3d at 881, 279 N.E.2d at 384.  Implicitly then, the court found the officer's testimony inadmissible or insufficient or both.  The defendant attempts to draw a parallel between that scenario and the facts of our case.  Here, as she notes, the evidence that the substance in the cooler was anhydrous ammonia consisted of the testimony of several officers that they smelled anhydrous ammonia.  There is one very critical distinction.  In our case, the officers testified that they smelled anhydrous ammonia at the scene.  In 
Brown
, by contrast, the officer testified that he smelled alcohol in the bottle he brought to court; he testified that he had not previously smelled or tasted the bottle's contents to determine that it in fact contained alcohol.  
Brown
, 3 Ill. App. 3d at 881, 279 N.E.2d at 384.  An in-court identification of an item the State failed to prove had any connection to the events at issue is quite different from testimony that a witness specifically recalls smelling the distinctive odor associated with a particular substance at the time in question.

In 
Newberry
, the alleged controlled substance 
was
 tested in a laboratory.  
Newberry
, 166 Ill. 2d at 312, 652 N.E.2d at 289.  However, the evidence was destroyed before the trial.  
Newberry
, 166 Ill. 2d at 313, 652 N.E.2d at 290.  The supreme court found that the evidence was therefore inadmissible for two reasons.  First, the evidence was destroyed after the defendant filed a discovery motion for it, thereby warranting a discovery sanction against the State.  
Newberry
, 166 Ill. 2d at 317, 652 N.E.2d at 292.  Second, the destruction of the evidence meant that the defendant could not effectively challenge it.  
Newberry
, 166 Ill. 2d at 316, 652 N.E.2d at 291.  Under these circumstances, allowing the State to bring in evidence of the test results through testimony would be unfair because scientific test results tend to carry more weight than other types of evidence.  
Newberry
, 166 Ill. 2d at 317, 652 N.E.2d at 292.

In 
Newberry
, the court did not address the propriety of proving the composition of a substance through circumstantial evidence because the State, having presented scientific evidence that on appeal was found to be inadmissible, did not present any.  Other cases have, however, found circumstantial evidence of a substance's composition to be sufficient.  See, 
e.g.
, 
People v. Minter
, 89 Ill. App. 3d 220, 222, 411 N.E.2d 597, 598 (1980); 
People v. Binkley
, 25 Ill. App. 3d 27, 31, 322 N.E.2d 514, 517 (1975) (citing 
People v. Robinson
, 14 Ill. 2d 325, 153 N.E.2d 65 (1958)).  Although we have found no case precisely on point, we think the officers' testimony regarding the smell of the anhydrous ammonia was sufficient due to its distinctive odor.  Our conclusion is bolstered by the impossibility of performing forensic testing on anhydrous ammonia.  See 
Park
, 72 Ill. 2d at 213-14, 380 N.E.2d at 800-01 (finding testimony that a substance was marijuana insufficient to prove that it was in fact marijuana due, in part, to the availability of a simple test); 
People v. Maiden
, 210 Ill. App. 3d 390, 400, 569 N.E.2d 120, 126-27 (1991) (testing one of three samples of a substance for the presence of PCP was insufficient where it would be easy for the State to test the remaining samples).

The defendant argues, however, that the officers who testified to smelling the odor of anhydrous ammonia lacked the expertise to identify the odor.  Deputy Miles and Deputy Douglas testified to no specialized training in dealing with anhydrous ammonia.  Chief Deputy Ted Holder testified that he received a four-hour training class on anhydrous ammonia.  Two inspectors from the Southern Illinois Drug Task Force were also called to the scene.  Of the two, only Inspector Ricky Griffey testified at the trial.  At the time the defendant was stopped, he had not yet received certification and training in dealing with anhydrous ammonia.  However, all three of the officers who testified to smelling anhydrous ammonia at the scene also testified that they had previously encountered anhydrous ammonia, which, as we have already explained, has a highly distinctive odor.  Identification of an illicit controlled substance by a witness is sufficient proof if the witness has "some peculiar knowledge of the substance" or the nature of the substance is such that identifying it would be a matter of common knowledge.  
Minter
, 89 Ill. App. 3d at 222, 411 N.E.2d at 598; see also 
Binkley
, 25 Ill. App. 3d at 32, 322 N.E.2d at 518 (finding sufficient identification of cannabis by a witness whose sole basis for the knowledge of cannabis came from her experience smoking it, coupled with additional circumstantial evidence that the substance was sold for a high price).  We believe that the officers' prior encounters with anhydrous ammonia are sufficient to meet this standard.

The defendant next argues that People's Exhibits 1D and 1E, photographs of residual liquid anhydrous ammonia in the bottom of a cooler that was found inside a bucket recovered from the trunk of her car, were admitted in error over her objection.  She contends that the State failed to lay a foundation for the exhibits because no witness testified to the origins of the photographs or a chain of custody for them.  Because the defendant did not address the admission of these exhibits in her posttrial motion, the issue is waived on appeal.  However, because she raises counsel's failure to preserve this issue for appeal as a part of her argument that she received ineffective assistance of trial counsel, we will address it in that context.  

We agree with the defendant that the photographs were not properly admitted, although for different reasons than those she puts forth.  We nevertheless do not believe she suffered prejudice as a result.  The conditions for the admissibility of photographic evidence are its relevance and its accuracy.  
People v. Myles
, 131 Ill. App. 3d 1034, 1042, 476 N.E.2d 1333, 1339 (1985).  The accuracy can be established by a witness who can identify the photograph and testify that it is an accurate depiction of the subject it portrays.  
People v. Beasley
, 109 Ill. App. 3d 446, 451-52, 440 N.E.2d 961, 965 (1982).  Here, although three witnesses identified the two photographs, not one was ever asked if the photographs accurately depicted the cooler.  However, the witnesses universally testified that they identified the substance not from its appearance, but from its odor.  Thus, we do not think that the defendant was prejudiced by counsel's failure to raise the issue in her posttrial motion.

The defendant next argues that she was prejudiced by misstatements of the evidence in the prosecutor's closing arguments.  As she acknowledges, she did not object to the challenged remarks at the trial.  We find that, even had the defendant objected, the relevant statements were not so prejudicial to require a reversal.

The prosecutor argued, in relevant part, as follows:

"You will recall[,] Deputy Kent Miles was going up on routine patrol, and one of the things that he was checking was the anhydrous ammonia location near Fruitbelt–near Highway 45.  And[] the testimony was[,] after he crossed Strawberry Shortcut Road, he could see a car parked with three lights on it.  And it was stopped.  And, as he approached it, the eye[-]level brake light disappeared.  As he gets closer, he sees it's because there is a person putting something in the trunk.  The trunk is closed.  He sees a person in full camouflage *** getting in the passenger compartment of the car.  And, circumstantially, he thought it was clear that he had observed anhydrous [ammonia] being stolen from the Fruitbelt plant.

* * * 

And, when he was talking to this defendant, outside the vehicle, he smelled anhydrous ammonia.  He called for back[]up.  The trunk was opened.  This container was there, containing anhydrous ammonia."

The prosecutor further argued that the defendant's car was stopped after "speeding off from the anhydrous facility of Fruitbelt Incorporated".  With respect to the defendant's contention that she could not smell the anhydrous ammonia and was unaware that whatever Draffen had placed in the trunk contained anhydrous ammonia, the prosecutor argued that common sense would tell the jurors that if the officers smelled anhydrous ammonia when they were at the scene, the defendant must have smelled it, too, both inside and outside the car.  

The defendant first argues that the prosecutor misstated the evidence because he implied that Deputy Miles was specifically checking on the anhydrous ammonia tanks "for suspected anhydrous ammonia thefts when he saw a car 'speeding away' from Fruitbelt".  We think the initial statement–that Deputy Miles was on routine patrol and that one of the things he was checking on patrol was the Fruitbelt facility–accurately states the evidence.  Deputy Miles' unrefuted testimony established that he was on routine patrol and that the area near Fruitbelt's anhydrous ammonia tanks was one of the things he checked on his routine patrol.  We do not think the statement even implies he was checking for suspected thefts, which would be inconsistent with the statement that he was "on routine patrol".  

We agree, however, that the assertion that Deputy Miles stopped the defendant's car after he saw her "speeding away" from the Fruitbelt facility misstated the evidence.  Deputy Miles decided to stop the defendant when he saw her car stopped in the roadway, before she continued driving, and the record contains no evidence regarding the speed at which she drove away.  We do not believe that the statement was prejudicial enough to warrant a reversal, however.  The thrust of the prosecutor's argument, considered as a whole, was that the evidence that Draffen had put something in the trunk while the car was parked near the tanks, coupled with evidence that the officers had smelled anhydrous ammonia, demonstrated, circumstantially, that Draffen and the defendant had stolen the anhydrous ammonia.  The isolated remark does not change the thrust of the argument or the impression the jury would have after hearing it.

The defendant further argues that the prosecutor misstated evidence because (1) Deputy Miles never testified that he actually saw Draffen put anything in the trunk, (2) Deputy Miles did not see that Draffen was dressed in camouflage (common among people stealing anhydrous ammonia for use in manufacturing methamphetamine) until after he had stopped the defendant's car, and (3) the prosecutor's argument implies that Deputy Miles smelled anhydrous ammonia immediately upon stopping the vehicle and determined the trunk should be opened to ventilate the anhydrous ammonia for the sake of safety, while the testimony indicated Deputy Douglas accidentally opened the trunk and Deputy Miles was not initially aware of the anhydrous ammonia odor.  We do not find any of these statements to be prejudicial enough to warrant a reversal, not even cumulatively.  The prosecutor admitted that Deputy Miles' suspicion that he had witnessed the theft of anhydrous ammonia came through circumstantial observations.  Although it is true that Deputy Miles did not actually see Draffen place anything in the trunk, we think the clear implication of his testimony was that he had inferred from what he did see that Draffen had done precisely that.  Further, the exact moment that Deputy Miles noticed that Draffen was dressed in camouflage, which provided further support for the inference that he was stealing anhydrous ammonia, was not relevant to the determination the jury was called upon to make.  

The prosecutor's argument that Deputy Miles determined that the trunk needed to be opened for the sake of ventilation due to the hazardous nature of anhydrous ammonia is somewhat more troubling.  It casts Deputy Miles and Deputy Douglas in a more favorable light than does their actual testimony, which was that Deputy Douglas touched the key and the trunk flew open on its own.  Nevertheless, we do not believe that a more accurate statement of this portion of the events leading to the discovery of the evidence would make the jury see the evidence itself (the smell of the anhydrous ammonia or the fact that a substance was recovered from the trunk at all) any differently.  Thus, although we strongly disapprove of the prosecutor's careless statements, we find no prejudice to the defendant as a result.

Finally, the defendant argues that she received ineffective assistance of counsel because counsel failed to (1) file a motion to suppress evidence challenging the legality of the search of the car, (2) file a discovery motion addressing the anhydrous ammonia, (3) object to hearsay testimony, (4) request that the jury be instructed that the officers' testimony was not proof that the substance was anhydrous ammonia, and (5) challenge the admission of the photographs in her posttrial motion.  In order to support a claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was objectively unreasonable and that, but for counsel's unprofessional errors, it is reasonably probable that she would have obtained a different result.  
People v. Brown
, 172 Ill. 2d 1, 28, 665 N.E.2d 1290, 1302 (1996) (citing 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and 
People v. Albanese
, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984)).  If a motion to suppress would have been properly denied or an objection properly overruled, counsel is not ineffective for failing to file the motion or object.  See 
People v. Singleton
, 217 Ill. App. 3d 675, 689, 577 N.E.2d 838, 847 (1991).

The defendant argues that a motion to suppress should have been made and granted because (1) the traffic stop itself was not valid and (2) even if the stop was valid, the search exceeded the permissible scope of the stop.  We disagree with both contentions.  

We agree with the State that the defendant's argument that the stop was invalid at its inception is based on a faulty reading of section 11-1301(a) of the Illinois Vehicle Code (625 ILCS 5/11-1301(a) (West 1998)).  That section provides as follows:

"Outside a business or residence district, no person shall stop, park[,] or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park[,] or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles ***."  625 ILCS 5/11-1301(a) (West 1998).

The defendant contends that no officer could reasonably believe she was in violation of this statute because (1) she was neither outside a business nor in a residential area, (2) it was not practicable to pull off to the side of the road because there were no shoulders, and (3) she left enough room for vehicles to pass in the second lane of traffic.  First, we read the language that the statute is applicable only "[o]utside a business or residence district" to mean the statute is applicable to areas other than business or residential districts, rather than areas inside business districts that are immediately outside businesses and areas that are not residential areas.  Second, the record does not contain evidence of whether there was a shoulder or how many lanes there were on the highway.  Moreover, we agree with the State that the language mandating that "in every event" drivers must leave enough room for traffic to get around them does not mean that drivers can pull over anywhere they please as long as there is a second lane of traffic.  Rather, we think it means that a driver for whom it is not practicable to pull off the road onto a shoulder has to pull as far to the side of the road as possible in order to allow the passage of other vehicles around his or her vehicle.  One rule of statutory construction is to avoid a result that is absurd.  
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 59, 759 N.E.2d 533, 555 (2001).  We conclude that Deputy Miles had probable cause to stop the defendant for stopping her vehicle in the roadway.

The defendant also argues that, even if the initial stop was valid, the search of the trunk exceeded the permissible scope of the stop.  She contends that Deputy Miles admitted on cross-examination that he did not smell anhydrous ammonia until Deputy Douglas opened the trunk.  This mischaracterizes his testimony.  When defense counsel asked Deputy Miles what happened when Deputy Douglas opened the trunk, Deputy Miles replied: "Well, first I noticed a strong smell of anhydrous [ammonia].  And, then, we saw the five[-]gallon bucket."  This does not refute his testimony on direct examination that he smelled a faint odor of anhydrous ammonia when the trunk was closed.  

Much of the rest of the defendant's argument in this regard focuses on inconsistencies in the trial testimony of the police officers involved.  For example, Deputy Miles testified that he smelled anhydrous ammonia before the trunk was open, yet he allowed the defendant and Draffen to remain in the vehicle for 10 minutes despite the danger posed by the presence of the material.  Deputy Douglas claims that he merely touched a key that had been left in the keyhole to the trunk, causing the trunk to open on its own.  While we agree that some of this testimony, at least potentially, could have cast doubt on the officers' credibility at a suppression hearing had such a motion been filed, we believe that additional information known to the officers gave them probable cause to search the vehicle.  Draffen, the passenger in the defendant's car, was suspected in recent thefts of anhydrous ammonia from the nearby Fruitbelt plant, and Deputy Miles saw Draffen close the trunk of the defendant's car while it was stopped in front of Fruitbelt's anhydrous ammonia tanks, an act which logically led to the inference that he had placed something there.  Viewing these circumstances in their entirety, we conclude that the officers had probable cause to search the vehicle (including the trunk) and that a motion to suppress would have been properly denied.  Thus, the defendant suffered no prejudice as a result of defense counsel's failure to file one, even assuming her performance was objectively unreasonable.

The defendant next argues that counsel was ineffective for failing to file a discovery motion aimed at the anhydrous ammonia.  Her argument relies, in large part, on 
Newberry
, in which the Illinois Supreme Court held that the State's Attorney committed a sanctionable discovery violation by failing to preserve evidence the defendant had requested in discovery.  She argues that, had defense counsel filed a discovery motion, the charges against her would have been dismissed had the State destroyed the evidence.  Inspector Griffey testified that anhydrous ammonia is a liquid mixed with a vapor.  It is hazardous and evaporates easily.  Because of its unique nature, it is not susceptible to being stored for future testing.  Moreover, unlike the evidence at issue in 
Newberry
, the State does not have the benefit of adding weight to its evidence by referring to it as the results of scientific testing.

The defendant further contends that trial counsel was ineffective for failing to request that the judge instruct the jury that the officers' testimony that they smelled anhydrous ammonia at the scene could not constitute proof that the substance was, in fact, anhydrous ammonia.  As discussed in detail earlier, testimony regarding the distinctive odor of anhydrous ammonia is the only realistic way to identify anhydrous ammonia.  We have also concluded that this testimony was sufficient to prove that the substance was anhydrous ammonia.  Therefore, we find that, had such an instruction been tendered, it would properly have been refused.  Counsel was not ineffective for failing to request the instruction.

The defendant next contends that trial counsel was ineffective for failing to object to some of Chief Deputy Holder's testimony on the grounds that it was hearsay.  Much of the challenged testimony related to the defendant's theft charge, the conviction on which was reversed in her initial appeal.  We therefore need not consider it.  The only relevant statement was Deputy Holder's testimony that Dean Hamilton identified the substance as anhydrous ammonia.  The defendant argues that this was highly prejudicial because Hamilton (who, as noted previously, did not testify) was the only potential witness with the expertise to identify the anhydrous ammonia.  The State argues, however, that Deputy Holder's testimony regarding Hamilton's identification of the substance as anhydrous ammonia was merely duplicative of the testimony of three officers that they smelled anhydrous ammonia at the scene.  

We do not entirely agree with either party's contention.  For the reasons we discussed earlier, we disagree with the defendant that the witnesses who did testify were not qualified to identify the substance as anhydrous ammonia.  However, because Hamilton appeared to have greater expertise than the other officers, his identification of the substance as anhydrous ammonia might have carried more weight than that of any of the other officers who testified.  Nevertheless, we believe that, in the face of the three officers' unanimous testimony that they smelled anhydrous ammonia at the scene and the additional circumstantial evidence, the isolated statement regarding Hamilton did not prejudice the defendant.  Thus, she cannot demonstrate that she was prejudiced by counsel's failure to object.

Finally, the defendant contends that trial counsel was ineffective for failing to address in her posttrial motion the admission of the photographs of the residue.  We have already concluded that the defendant was not prejudiced by the admission of the photographs and that, therefore, counsel was not ineffective for failing to address them in her posttrial motion.  We conclude that the defendant received effective assistance of counsel at the trial.

For the foregoing reasons, we affirm the defendant's conviction for chemical breakdown of an illicit controlled substance.

Affirmed.

GOLDENHERSH and HOPKINS, JJ., concur.

FOOTNOTES
1:
Justice Charles W. Chapman participated in the oral argument and the initial decision in this case.  Justice Melissa A. Chapman was later substituted on the panel upon remand.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/24/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.